**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 10 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

SYLVIA DAVIS, as Guardian and
Next Friend for Donnell E. Davis;
DOSAR-BARKUS BAND OF THE
SEMINOLE NATION OF
OKLAHOMA; BRUNER BAND OF
THE SEMINOLE NATION OF
OKLAHOMA,

       Plaintiffs-Appellants,

    v.

UNITED STATES OF AMERICA;
DEPARTMENT OF INTERIOR;
BUREAU OF INDIAN AFFAIRS;
GALE NORTON, Secretary of the
Interior, her agents, employees and
successors; NEAL A. MCCALEB,
Assistant Secretary of the Interior for
Indian Affairs, his agents, employees
and successors; GLORIA SPYBUCK,
Superintendent, Bureau of Indian
Affairs, Wewoka Agency; and
JEANETTE HANNA, Regional
Director, Bureau of Indian Affairs,
Eastern Oklahoma Regional Officer,
her agents, employees and successors,

       Defendants-Appellees.

No. 02-6198

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CIV-96-1988-M)**

Franklin B. Velie of Salans Hertzfeld Heilbronn Christy & Viener, New York, New York (Mark H. Goldey of Salans Hertzfeld Heilbronn Christy & Viener, New York, New York; Jonathan T. Velie and William B. Velie of Velie & Velie, Norman, Oklahoma, with him on the briefs), for Plaintiffs-Appellants.

Aaron P. Avila, Attorney, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C. (Thomas L. Sansonetti, Assistant Attorney General; Robert G. McCambell, United States Attorney, Arvo Q. Mikkanen, Assistant United States Attorney, Oklahoma City, Oklahoma; John A. Bryson, Attorney, United States Department of Justice, Environment & Natural Resources Division, Washington, DC.; Susan K. Ehlen, Charles R. Babst Jr., United States Department of the Interior, Office of the Solicitor, Tulsa, Oklahoma, of counsel, with him on the brief), for Defendants-Appellees.

Before **MURPHY** , **BALDOCK** , and **HARTZ** , Circuit Judges.

**HARTZ** , Circuit Judge.

Plaintiffs are two bands of the Seminole Nation of Oklahoma (the Tribe)—the Dosar Barkus and Bruner Bands— and Sylvia Davis as the guardian and next friend of Donnell E. Davis, a member of the Dosar Barkus Band. They claim that because of their African ancestry, they have been systematically denied benefits routinely provided to other members of the Tribe. Plaintiffs did not sue the Tribe itself but instead brought suit against the United States and various federal agencies and officials. Plaintiffs contend that (1) the federal officials wrongfully allowed the Tribe to exclude them from participation in some of its assistance programs, and (2) the Bureau of Indian Affairs (BIA) improperly refused to issue

-2-

Certificates of Degree of Indian Blood (CDIBs) to members of the Plaintiff-bands. They seek declaratory and injunctive relief.

The district court initially dismissed the case for failure to join an indispensable party, the Tribe. *Davis v. United States*, No. CIV-96-1988-M, slip op. at 10 (W.D. Okla. Mar. 20, 1998). On appeal we affirmed in part, reversed in part, and remanded to the district court for further consideration. *Davis v. United States*, 192 F.3d 951 (10th Cir. 1999) (*Davis I*). On remand the district court again dismissed Plaintiffs' claims. *Davis v. United States*, 199 F. Supp. 2d 1164 (W.D. Okla. 2002) (*Davis II*). We now hold that (1) the district court did not abuse its discretion in determining that the Tribe is an indispensable party with respect to the wrongful-exclusion claim, and (2) the district court correctly ruled that it lacked jurisdiction to hear the CDIB claim because Plaintiffs failed to show that they had exhausted their administrative remedies. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Our discussion of the historical background can be brief because of the thorough treatment in *Davis I* and *Davis II*. The Seminole Nation was formed after the European conquest of America. In addition to members of Native American ancestry, it also includes members of African ancestry, descendants of escaped slaves who began living among Native American groups in the then-

foreign territory that became Florida. In 1823 the Seminole Nation's Florida lands were ceded to the United States by the Treaty of Camp Moultrie. Thereafter, most of the Seminole Nation's people, including those of African ancestry, were forcibly removed to what is now Oklahoma.

After removal the Tribe entered into a treaty with the United States addressing the rights of its members of African descent, the "Estelusti." That treaty, which we will refer to as the Treaty of 1866, contains the following language:

> [I]nasmuch as there are among the Seminoles many persons of African descent and blood, who have no interest or property in the soil, and no recognized civil rights, it is stipulated that hereafter these persons and their descendants, and such other of the same race as shall be permitted by said nation to settle there, shall have and enjoy all the rights of native citizens, and the laws of said nation shall be equally binding upon all persons of whatever race or color who may be adopted as citizens or members of said tribe.

Treaty with the Seminole Indians, Mar. 21, 1866, U.S.-Seminole Nation of Indians, Art. II, 14 Stat. 755, 756. Notwithstanding this sweeping language, the United States itself continued to distinguish the Estelusti from tribal members of Native American ancestry.

For instance, when the Dawes Commission in 1906 created official membership rolls for the Seminole Nation of Oklahoma, it created two rolls, one for those of Native American ancestry (the "Seminole Blood Roll") and one for the Estelusti (the "Freedmen Roll"). A member of mixed ancestry was classified

-4-

in accordance with maternal ancestry.  Today, these membership rolls, often referred to as the "Dawes Rolls," are authoritative evidence of tribal membership.  Any person who can show descent from a person listed on either of the two rolls is recognized as a member of the Tribe.

The Tribe's members are divided among 14 bands.  The two Plaintiff-bands consist entirely of descendants of those listed on the Freedmen Roll.  Even as tribal members, however, the Estelusti do not receive full membership benefits.  Participation in some of the Tribe's programs requires a CDIB card, "the BIA's certification that an individual possesses a specific quantum of Indian blood." *Davis I*, 192 F.3d at 956.

A member of the Tribe can obtain a CDIB card by proving a specified relationship to a person listed on the Seminole Blood Roll.  A person who proves the same relationship with respect to a person listed on the Seminole Freedmen Roll, however, is not entitled to a CDIB.  In a letter dated October 4, 1995, the Superintendent of the Wewoka Agency of the Bureau of Indian Affairs explained this differential treatment:

> The Certificate of Degree of Indian Blood makes or infers no mention of Tribal Membership.  The policy states that my responsibility is to certify one[']s Indian blood when acceptable proof of relationship to an individual enrolled on specific rolls of particular tribes [is presented]. . . . [T]here are persons listed on the Freedman roll who were part Indian.  As you know, the Seminole Nation follows maternal lineage, for example, if the person's mother was [F]reedman and the father was Indian by blood, the person was

enrolled in the [F]reedman roll. This person was still part Indian and he/she and his/her descendants would be eligible to receive a [CDIB]. . . . Our policy is not to deny [Freedmen CDIBs], but to state that adequate proof of relationship to a person with Indian blood has been provided by them. . . . Stated simply, if a Freedman band member or anyone else applies for a [CDIB] that cannot provide acceptable proof of relationship to a Seminole Indian by blood, they will be denied a [CDIB].

Aple. Supp. App. at 168-69. According to Plaintiffs, many members of the Dosar Barkus and Bruner Bands of the Seminole Nation of Oklahoma have been denied CDIBs under the BIA's policy. Consequently, members of the Plaintiff-bands have been excluded from participation in programs for which CDIB cards are required.

Among the programs to which members of the Plaintiff-bands have been denied access are what the parties refer to as judgment-fund programs. These programs are supported by a $56 million judgment awarded to "the Seminole Nation *as it existed in Florida on September 18, 1823*," *Davis I*, 192 F.3d at 955-56 (internal quotation marks omitted; emphasis added), as compensation for the 1823 taking of its Florida lands. Before Congress released the judgment funds for the use of the Tribe, the BIA recommended that it exclude the Estelusti from participation because the Estelusti were not officially recognized as members of the Tribe until the Treaty of 1866.

Congress did not, however, specifically exclude the Estelusti; it simply allocated the Tribe's share of the judgment to the "Seminole Nation of

Oklahoma." Act of April 30, 1990, Pub. L. No. 101-277, § 2(a)(1), 104 Stat. 143,

143 ("Distribution Act"). (The remainder of the funds were awarded to "the

Seminole Tribe of Florida, the Miccosukee Tribe of Indians of Florida and the

independent Seminole Indians of Florida." Distribution Act, § 2(a)(2), 104 Stat.

at 143.) Instead of creating its own detailed distribution plan for use of the funds,

Congress allowed the Tribe, in conjunction with the Secretary of the Interior, to

propose its own plan so long as that plan "provide[d] that not less than 80 per

centum [of the Tribe's judgment fund] . . . be set aside and programmed to serve

common tribal needs, educational requirements and such other purposes as the

circumstances of the Seminole Nation of Oklahoma may determine." Distribution

Act, § 3(a) & § 4(a), 104 Stat. at 143-44.

Thereafter, the Tribe's General Council adopted a proposed distribution

plan. The plan submitted to Congress generally provided that the Tribe's

judgment funds would be used to support programs in such areas as "[h]ealth,

education, [and] social services"; but it did not describe any programs

specifically. Plan for the Use of the Seminole Nation of Oklahoma Indian

Judgment Funds in Docket Nos. 73 and 151 Before the Indian Claims

Commission, 56 Fed. Reg. 32,480, 32,480 (July 16, 1991). Instead, it provided

that the Tribe would develop specific programs and submit proposals for those

programs to the BIA for approval. When Congress did not reject the Tribe's plan,

it became effective under § 4(d) of the Distribution Act. *See* 104 Stat. at 144 ("A plan for the. . . distribution of the judgment funds referred to in this Act shall be implemented . . . immediately at the end of the sixty-day period . . . beginning on the day such plan is submitted to the Congress, unless during such sixty-day period a joint resolution is enacted disapproving such plan.").

Thereafter, the Tribe's General Council established specific programs to be funded by the award. It created programs to assist with school clothing, burial expenses, elder care, and educational expenses. Many of those programs contained the following eligibility requirement: "[The applicant] must be an enrolled member of the Seminole Nation of Oklahoma who has been determined to have descended from a member of the Seminole Nation as it existed in Florida on September 18, 1823." *E.g.*, Aple. Supp. App. at 77. Because the Estelusti were not expressly recognized as members of the Tribe until the Treaty of 1866, Estelusti descent would not satisfy this requirement. Although the Tribe would accept a person's CDIB card as proof of descent "from a member of the Seminole Nation as it existed in Florida . . . [in] 1823" (even though CDIB cards are issued with reference to the Seminole Blood Roll created in 1906), most Estelusti were unable to obtain CDIB cards because of the BIA's CDIB-issuance policy. Thus, the Tribe's program-eligibility requirements and the BIA's CDIB-issuance policy combined to exclude most Estelusti from participation in judgment-fund

-8-

programs. In an effort to gain access to these programs, Plaintiffs initiated this litigation challenging both the program-eligibility requirements and the BIA's CDIB-issuance policy.

## II. Course of Proceedings

Plaintiffs named the United States, the Department of the Interior, the Bureau of Indian Affairs, and officials of both agencies as defendants in this action. They did not, however, name the Tribe or its officials. Plaintiffs sought to compel Defendants to require the Tribe to distribute judgment funds in a nondiscriminatory manner, and/or to condition further release of judgment-fund money on compliance with a nondiscriminatory distribution policy. They also requested an order requiring the BIA to issue CDIB cards to members of the Plaintiff-bands who applied.

The district court initially dismissed Plaintiffs' claims because it found the absent Tribe to be an indispensable party whose sovereign immunity prevented its joinder. On appeal in *Davis I* we held that (1) with respect to the judgment-fund claims, the Tribe was in fact a necessary party but was not necessarily an indispensable one, and (2) with respect to Plaintiffs' CDIB-card claims, dismissal on the basis of indispensability was inappropriate because the issue was not adequately addressed below. On remand the district court again found the Tribe indispensable to litigation of the judgment-fund claims, but dismissed the CDIB-

card claims on another basis—failure to exhaust administrative remedies.

Plaintiffs challenge both dismissals on appeal. We address each in turn.

## III. Judgment-Fund Claims

The district court dismissed Plaintiffs' judgment-fund claims because an indispensable person, the Tribe, could not be joined as a party. Federal Rule of Civil Procedure 19 requires the district court to perform a two-step analysis before dismissing a claim for failure to join an indispensable person. *See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996). First, the court must determine whether the absent person is "necessary." *Id.* A person is "necessary" under Rule 19(a) if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). A necessary person must be joined as a party if joinder is feasible. *Id.* If a necessary person cannot be joined, the court proceeds to the second step, determining "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, [because] the

absent person . . . [is] indispensable" to the litigation at hand.  Fed. R. Civ. P. 19(b).

In *Davis I* we affirmed the district court's determination that the Tribe was a necessary person.  We held that "[t]he Tribe's claimed interest in determining eligibility requirements and adopting ordinances embodying those requirements is neither fabricated nor frivolous.  The disposition of Plaintiffs' Judgment Fund Award claim in the Tribe's absence will impair or impede the Tribe's ability to protect its claimed interest."  192 F.3d at 959.

The Tribe's sovereign immunity prevented its joinder as a party.  Thus, the district court's task on remand was to determine whether the Tribe was indispensable to this litigation or whether the case could proceed without it.  In making this determination, the court was to consider, "in a practical and equitable manner," *Rishell*, 94 F.3d at 1412, the following factors:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; [and] fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  This list of factors is not, however, exclusive.  *See Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986) (the "four factors are not rigid, technical tests, but rather guides to the overarching

-11-

equity and good conscience determination" (internal quotation marks omitted)); 7

Charles Alan Wright et al., Federal Practice and Procedure § 1608 at 91 (3d ed.

2001) ("the list in [Rule 19(b)] does not exhaust the possible considerations the

court may take into account; it simply identifies those that will be most

significant in most cases").

A district court's indispensability determination under Rule 19 will not be

disturbed absent an abuse of discretion. *See Rishell*, 94 F.3d at 1410-11. Its

underlying legal conclusions, however, are reviewed de novo. *Davis I*, 192 F.3d

at 957. The court abuses its discretion in making an indispensability

determination when it fails to consider a relevant factor, relies on an improper

factor, or relies on grounds that do not reasonably support its conclusion. *See*

*Rishell*, 94 F.3d at 1411; *cf. Thunder Basin Coal Co. v. Southwestern Pub. Serv.*

*Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997) (weight to be accorded each factor is

matter for district court's discretion).

In *Provident Tradesmens Bank and Trust Co. v. Patterson*, 390 U.S. 102

(1968), the Supreme Court described the Rule 19(b) factors as representing four

distinct interests: (1) "the interest of the outsider whom it would have been

desirable to join," *id.* at 110; (2) the interest of the defendant in avoiding

"multiple litigation, . . . inconsistent relief, or sole responsibility for a liability he

shares with another," *id.*; (3) "the interest of the courts and the public in

-12-

complete, consistent, and efficient settlement of controversies[,] . . . settling disputes by wholes, whenever possible . . . ." *id.* at 111; and (4) the plaintiff's interest in having a forum in which to present the claims, *id.* at 109.

In this case the district court weighed the Rule 19(b) factors and found that the Tribe was an indispensable person with respect to Plaintiffs' judgment-fund claims. It explained that while the lack of an alternate forum "weigh[ed] heavily" in favor of retaining the case, *Davis II*, 199 F. Supp. 2d at 1178, "the prejudice to the absent Tribe, the Court's inability to lessen the prejudice[,] and the absence of an adequate remedy without the Tribe's joinder [because of the possibility that Defendants would be subjected to repeated litigation and conflicting judgments] prevent[ed] proceeding in equity and good conscience [without the Tribe]," *id.* In other words, the court found that the first three factors supported dismissal to such an extent that the fourth factor was overcome.

Plaintiffs contend that the district court erred in both its analysis of the individual Rule 19(b) factors and in its weighing of those factors. First, they argue that the district court failed to recognize that the Tribe's interest—which Plaintiffs characterize as "the right to exclude its black citizens from enjoyment of the Judgment Fund," Aplt. Br. at 16—is not a "legally cognizable interest," *id.* Plaintiffs assert that given the absence of a legally cognizable interest, either (1) the Tribe was never a necessary person and consequently cannot be regarded as an

indispensable one, or (2) in weighing the first Rule 19(b) factor—potential prejudice to the absent person or the parties—the court should have recognized that an interest that is not legally cognizable cannot be legally prejudiced. Also with respect to the first factor, they argue that the district court should not have considered potential prejudice to Defendants because such prejudice is entirely speculative. Regarding the second Rule 19(b) factor—whether "prejudice can be lessened or avoided"—Plaintiffs claim that the absence of prejudice moots the issue.

In addition, Plaintiffs take issue with the district court's analysis of the third factor—"whether a judgment rendered in the person's absence will be adequate." Fed. R. Civ. P. 19(b). They contend that a judgment in the Tribe's absence would be adequate because in the event that the BIA stopped disbursing the funds to the Tribe, one of two things would happen: either the Tribe would quickly change its requirements, or it would no longer have funds to distribute in a discriminatory manner. In either event, the discriminatory disbursement would cease "immediately and unequivocally." As for the fourth factor—whether adequate relief can be obtained in an alternate forum—Plaintiffs assert that while the district court correctly concluded that this factor weighed against dismissal, it placed far too little emphasis on its conclusion. Finally, they claim that the

district court erroneously failed to consider equitable factors not specifically listed in Rule 19(b). We proceed to discuss each challenge.

### A. Factor 1: Prejudice to the Tribe or the parties

#### 1. The Tribe's Interest

Plaintiffs challenge the district court's conclusion that the Tribe's interest would be prejudiced if the case were to proceed in its absence. They describe the Tribe's interest as an "interest in excluding the Estelusti from the Judgment Fund," Aplt. Br. at 21, and argue that such an interest is legally frivolous when evaluated in light of the district court's alleged findings that (1) "Congress intended the Judgment Fund to benefit all members of the Seminole Nation, including the Estelusti," and (2) "the BIA colluded with certain Tribal leaders to exclude the Estelusti from enjoyment of the Judgment Fund." Aplt. Br. at 15. They assert that the illegitimacy of the interest is significant because (1) without a legitimate interest, the Tribe is not a necessary person and thus cannot be an indispensable one; and (2) an illegitimate interest cannot be legally prejudiced under the first Rule 19(b) factor.

We reject the challenge. Plaintiffs' argument amounts to asking us to decide that the Tribe's "interest" is not worthy of consideration because its position is wrong on the merits. But Rule 19's concern is with a *"claimed* interest." Fed. R. Civ. P. 19(a) (emphasis added). "[T]he underlying merits of

-15-

the litigation are irrelevant" to a Rule 19 inquiry, *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 998 (10th Cir. 2001), at least unless the claimed interest is "patently frivolous." *Davis I*, 192 F.3d at 959 (internal quotation marks omitted). In *Davis I* we responded as follows to virtually the same argument that Plaintiffs make here:

> Plaintiffs' narrow interpretation of the term "legally protected interest" inappropriately presupposes Plaintiffs' success on the merits. Under the interpretation advanced by Plaintiffs, the Tribe would have no legally protected interest in the monies used to fund Judgment Fund Programs that exclude the Estelusti Seminoles only if Plaintiffs prevail on the merits. Consequently, if this court adopted Plaintiffs' interpretation of the term "legally protected interest," the district court would be required to determine the merits of Plaintiffs' Judgment Fund Award claim before ruling on Defendants' motion to dismiss. Such an approach is untenable because it would render the Rule 19 analysis an adjudication on the merits.

*Davis I*, 192 F.3d at 958. *Davis I* made this statement in the context of Rule 19(a). We are now addressing the issue in the context of Rule 19(b). The same reasoning applies here, however, because the prejudice inquiry under Rule 19(b) "is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest." *Enter. Mgmt. Consultants, Inc. v. Hodel*, 883 F.2d 890, 894 n.4 (10th Cir. 1989). Even if our prior decision on the Rule 19(a) issue is not strictly speaking the law of the case with respect to the Rule

-16-

19(b) issue, *see Weston v. Harmatz*, 335 F.3d 1247 (10th Cir. 2003), we see no reason to abandon here the cogent reasoning in *Davis I*.

We note that in some cases the interests of the absent person are so aligned with those of one or more parties that the absent person's interests are, as a practical matter, protected. *See, e.g.*, *Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1260 (10th Cir. 2001); *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001). Here, however, the district court explicitly found that "[t]he BIA is not representing the Seminole Nation's interest in this lawsuit," *Davis II*, 199 F. Supp. 2d at 1176, and Plaintiffs do not challenge that finding on appeal.

## 2. Defendants' Interests

Plaintiffs argue that the district court should not have considered the risk of subjecting Defendants to inconsistent legal obligations because such obligations are entirely speculative. Specifically, they point out that the BIA need not comply with a Tribal regulation that might conflict with a ruling in favor of the Estelusti. More important, however, is that the Tribe would not be bound by the judgment in this case and could initiate litigation against Defendants if the BIA withheld funds. Thus, Defendants might well be prejudiced by multiple litigation or even inconsistent judgments if this litigation were to proceed without the Tribe. *See Patterson*, 390 U.S. at 110 (defendant's interest in avoiding multiple litigation is proper consideration under Rule 19(b)).

-17-

This possibility is not speculative. Plaintiffs themselves recognize the substantial likelihood of subsequent litigation when they state (while addressing another issue): "[T]he Tribe reacts swiftly when the BIA cuts off federal funding. . . . The notion that [the] Tribe will not react to losing access to the $56 million Judgment Fund is absurd." Aplt. Br. at 26.

We conclude that the district court did not abuse its discretion in determining that under Rule 19(b), both the Tribe and Defendants have interests that would likely be prejudiced by litigation in the Tribe's absence.

B.  **Factor 2: Whether potential prejudice can be lessened or avoided.**

In their opening brief Plaintiffs raise only one challenge to the district court's analysis of the second Rule 19(b) factor—the extent to which any "prejudice can be lessened or avoided." They argue that the factor is irrelevant because any prejudice to the Tribe is not legally cognizable. As previously discussed, this argument goes to the merits of their claim, rather than the potential harm to the Tribe if Defendants lose. Their challenge, therefore, must fail. We find no error in the district court's determination that this factor supports treating the Tribe as an indispensable party. (Although Plaintiffs in their reply brief also argue that "any prejudice could be easily prevented by the fashioning of a decree against the BIA only," Reply Br. at 10-11, we do not address that argument

-18-

because it was not timely raised.  *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief.").)

C.    **Factor 3: Whether an adequate judgment can be entered in the Tribe's absence**

Plaintiffs contend that the third Rule 19(b) factor—"whether a judgment rendered in the person's absence will be adequate"—did not support dismissal because the court could have afforded them complete relief without joining the Tribe.  Plaintiffs, however, misconstrue the nature of the adequacy inquiry.  The Supreme Court has explained that Rule 19(b)'s third factor is not intended to address the adequacy of the judgment from the plaintiff's point of view.  *See Patterson*, 390 U.S. at 111 ("[T]he plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them.").  Rather, the factor is intended to address the adequacy of the dispute's resolution.  *See id*.  The concern underlying this factor is not the plaintiff's interest "but that of the courts and the public in complete, consistent, and efficient settlement of controversies," that is, the "public stake in settling disputes by wholes, whenever possible." *Id*.  As previously discussed, a judgment rendered in the Tribe's absence could well lead to further litigation and possible inconsistent judgments.  That judgment, therefore, would be

-19-

"inadequate." Consequently, the district court appropriately found that the third Rule 19(b) factor favored dismissal.

### D. Factor 4: Availability of an adequate remedy in another forum/Balancing the Factors

In addressing the fourth Rule 19(b) factor, the district court found that Plaintiffs would not have an adequate remedy if this case were dismissed. The court noted that Plaintiffs could pursue their claim "through the Tribe's legislative or judicial bodies, [but] recogniz[ing] the reality of these options, . . . it will be futile for the [Estelusti] to seek adjudication in these tribal forums." *Davis II*, 199 F. Supp. 2d at 1180. Defendants do not challenge this finding. The issue here, then, is not whether an adequate remedy can be found elsewhere, but only the weight to be given this factor.

Plaintiffs assert that the fourth Rule 19(b) factor is so important that after having found that it weighed against a finding of indispensability, the district court should have retained the case despite its findings with respect to factors one through three. We have described the fourth factor as "perhaps [the] most important," *Sac & Fox*, 240 F.3d at 1260, and have stated that "[t]he absence of an alternative forum . . . weigh[s] heavily, if not conclusively against dismissal," *Rishell*, 94 F.3d at 1413 (internal quotation marks omitted).

On the other hand, we have also recognized a "strong policy . . . favor[ing] dismissal when a court cannot join a tribe because of sovereign immunity." *Davis I*, 192 F.3d at 960. In fact, we have stated that "[w]hen . . . a necessary party . . . is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Enter. Mgmt.*, 883 F.2d at 894 (internal quotation marks omitted). The D.C. Circuit has explained:

> Although we are sensitive to the problem of dismissing an action where there is no alternative forum, we think the result is less troublesome in this case than in some others. . . . This is not a case where some procedural defect such as venue precludes litigation of the case. Rather, the dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent.

*Wichita & Affiliated Tribes of Oklahoma*, 788 F.2d at 777. As illustrated by our decision in *Sac & Fox*, however, this does not mean that balancing can be completely avoided simply because an absent person is immune from suit. *See Davis I*, 192 F.3d at 960. What it means is that the plaintiff's inability to obtain relief in an alternative forum is not as weighty a factor when the source of that inability is a public policy that immunizes the absent person from suit.

Here, the district court found "compelling" the unavailability of an alternative forum and recognized that generally, such unavailability "weigh[s] heavily, if not conclusively against dismissal." *Davis II*, 199 F. Supp. 2d at 1178

-21-

(internal quotation marks omitted). But it found that in this case Plaintiffs' interest in having a forum was outweighed by the other interests to be considered in the Rule 19(b) analysis. When viewed in light of the Tribe's sovereign immunity and the first three Rule 19(b) factors, we do not believe that the absence of an alternative forum weighs so heavily against dismissal that the district court abused its discretion in deciding not to retain Plaintiffs' case.

### E.    **Other Equitable Factors**

Plaintiffs' final challenge to the dismissal of their judgment-fund claims is that in making its Rule 19(b) determination "in equity and good conscience," the district court should have considered factors other than those specifically listed in Rule 19(b). *See Wichita & Affiliated Tribes of Oklahoma*, 788 F.2d at 774. The flaw in this challenge is that the additional factors proposed by Plaintiffs are merely recharacterizations of factors already considered. First, Plaintiffs claim that "[o]nce the district court determined that the BIA had deliberately evaded Congressional intent on the basis of racial animus, the BIA's arguments for dismissal lose any remaining force . . . [and] are exposed, not as legitimate Agency positions or policy arguments, but as an effort to avoid judicial scrutiny of its unlawful and inequitable conduct." Aplt. Br. at 28 (internal citation omitted). We question Plaintiffs' description of the district court's opinion. But in any event, this argument amounts to no more than a restatement of Plaintiffs'

argument with respect to the legitimacy of the Tribe's interests, an argument that we have rejected because it goes to the substantive merits of the litigation.

Next, Plaintiffs argue that "the abuses long suffered by the Estelusti at the hands of the Tribe and the BIA favor allowing them the opportunity to resolve their claims, even if the district court believed that its rulings would be ultimately ineffective against the Tribe, or that the BIA would be placed in a difficult position." *Id.* In essence, this is a reassertion of the argument that Plaintiffs should be afforded this forum because their interests outweigh the countervailing interests of the Tribe, Defendants, and the courts. This argument, however, has also been rejected.

In sum, the district court did not abuse its discretion in determining that Plaintiffs' judgment-fund claims could not, in equity and good conscience, proceed in the absence of the Tribe.

## IV. CDIB-Card Claims

The district court dismissed Plaintiffs' CDIB-card claims for failure to exhaust administrative remedies under the BIA's regulations. The parties disagree as to whether the claims were dismissed under Fed. R. Civ. P. 12(b)(1) or 12(b)(6). Rule 12(b)(1) provides for challenges to the court's subject-matter jurisdiction, while Rule 12(b)(6) provides for motions to dismiss the complaint for "failure to state a claim upon which relief can be granted." Dismissals under

either rule are generally reviewed de novo. *MacArthur v. San Juan County*, 309 F.3d 1216, 1220 (10th Cir. 2002) (12(b)(6)); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (12(b)(1)). If, however, the district court's ruling under Rule 12(b)(1) includes findings of jurisdictional facts, those findings are reviewed for clear error. *Holt*, 46 F.3d at 1003.

In their opening brief Plaintiffs assert only one challenge to the dismissal of their CDIB-card claims: that the dismissal was foreclosed by our holding in *Davis I* that "[t]he allegations in Plaintiffs' complaint are sufficient to resolve the jurisdictional issues in favor of Plaintiffs." 192 F.3d at 954 n.1. Plaintiffs acknowledge that in *Davis I* we said that "[o]n remand and by proper motion to the district court, Defendants may challenge the allegations made in the complaint and request that the district court make factual findings necessary to resolve any jurisdictional issues." *Id.* But Plaintiffs claim that Defendants never made that request. We disagree.

Defendants moved for dismissal under both Rule 12(b)(1) and Rule 12(b)(6). Whereas a motion under Rule 12(b)(6) challenges only the sufficiency of the complaint, *see MacArthur*, 309 F.3d at 1221, a motion under Rule 12(b)(1) "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends," *Holt*, 46 F.3d at 1003. A review of Defendants' district court brief makes clear that in moving to dismiss

Plaintiffs' CDIB-card claim, Defendants challenged not just Plaintiffs' allegations of jurisdiction but also the facts underlying those allegations. The Introductory Statement in Defendants' brief below contains the following passage:

> With respect to the claim that Plaintiffs were wrongfully denied CDIB cards, the Court should dismiss the case and/or grant summary judgment in favor of the Federal Defendants because of: 1) failure to exhaust administrative remedies, 2) failure to state a claim, and also because 3) the Federal Defendants possess sovereign immunity which has not been waived and the court otherwise lacks subject matter jurisdiction. Despite Sylvia Davis' claim that she applied for a CDIB for her son, Donnell Davis, BIA records do not disclose that either of the two individual Plaintiffs ever made any application for a CDIB card. Ms. Davis has presented no documentary evidence or record supporting her allegations.

Aplt. App. at 192-93 (internal citation omitted). Later, in the portion of the brief entitled "The Action Should Be Dismissed As To the CDIB Issues Because There Is No Final Agency Action Permitting Any Review of a Purported Claim Under the APA," Defendants said, "Because there is *no evidence* that the individual Plaintiffs have even applied for a CDIB card, the Plaintiffs' failure to exhaust administrative remedies deprives this court of jurisdiction and the claims should be dismissed," Aplt. App. at 218 (emphasis added).

Moreover, the district court, which can sua sponte question subject matter jurisdiction, *see Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1240 (10th Cir. 2001), clearly confronted the issue. Its opinion states:

-25-

[T]he Court finds plaintiffs have not demonstrated the Court has jurisdiction over their CDIB claim pursuant to the APA. The Court finds plaintiffs have not complied with the established administrative procedures which would render their CDIB card claim ripe for appeal. Although plaintiffs allege they completed and submitted applications for CDIB cards and the BIA failed to act, there remain administrative procedures that must be followed. Plaintiffs have not demonstrated they have complied with the provisions established for appealing inaction of an official. *The record is void of any evidence* that plaintiffs ever requested in writing that the BIA take action on their CDIB card applications.

*Davis II*, 199 F. Supp. 2d at 1180 (emphasis added). Because Defendants' motion challenged the facts underlying Plaintiffs' allegations of jurisdiction, the district court's resolution of that motion was not foreclosed by our holding in *Davis I*, which addressed only the sufficiency of the allegations themselves.

Plaintiffs respond that even if Defendants' motion to dismiss is properly construed as a motion under Rule 12(b)(1), the district court was nevertheless precluded from considering information beyond the allegations of the complaint. Consideration of such information, they claim, would have converted the motion into one for summary judgment. But, they point out, "The district court clearly did not grant summary judgment on the CDIB card claim; it dismissed the claim without prejudice." Aplt. Reply Br. at 16.

Again, their argument is misconceived. When a party challenges the allegations supporting subject-matter jurisdiction, the "court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve

-26-

disputed jurisdictional facts." *Holt*, 46 F.3d at 1003. "In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment]." *Id.*

We recognize that when "resolution of the jurisdictional question is intertwined with the merits of the case," it is necessary to "convert a Rule 12(b)(1) motion . . . into a [motion under] Rule 12(b)(6) . . . or . . . Rule 56." *Id.* But this is not such a case. When deciding whether jurisdiction is intertwined with the merits of a particular dispute, "the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002). The substantive issue in Plaintiffs' case is whether Plaintiffs were improperly denied CDIB cards, not whether a particular plaintiff has exhausted administrative remedies. *See id.* at 1325 (exhaustion of administrative remedies is "simply not an aspect of [a] substantive claim of discrimination"). Accordingly, we affirm the district court's resolution of Defendants' motion under Rule 12(b)(1).

To the extent that Plaintiffs raise additional challenges in their reply brief, we reject those challenges as not timely raised. *See Stump*, 211 F.3d at 533.

## V. Conclusion

We AFFIRM the judgment of the district court.