2012 OK CIV APP 5

**Todd WHITE, an individual, Plaintiff/Appellant,**

v.

**CITY OF DEL CITY, an Oklahoma municipality, Defendant/Appellee.**

**No. 107,711.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 30, 2011.

Certiorari Denied Jan. 17, 2012.

Loren Gibson, Gibson & Associates, P.L.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant.

David W. Kirk, Robert Ray Jones, Jr., Lytle, Soule & Curlee, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee.

JOHN F. FISCHER, Vice–Chief Judge.

¶ 1 Plaintiff Todd White appeals an order of the district court partially dismissing his claims against the City of Del City.

## BACKGROUND

¶ 2 Todd White was employed as a police officer for the City of Del City from November 2005 until August 30, 2006, when his employment was terminated. At the time of his termination, White was a probationary officer [1] and was a member of the Oklahoma

---

1. There was a dispute of fact as to whether White was a probationary employee at the time of his termination. The Del City Charter provides for a probationary period of six months, whereas a City Ordinance provides for a probationary period of one year. Probationary employees are excluded from the provisions in the City Charter providing review of a termination decision. The

Police Pension and Retirement System (System). White sought review of his termination before the Del City Board of Review (Board) pursuant to 11 O.S.2001 § 50–123.[2] The Board held hearings on White's termination from December 2006 to November 27, 2007, at which time the Board voted to deny White's de novo appeal of his termination.

¶ 3 White filed a petition on December 27, 2007, alleging various theories of recovery against the City related to his termination and to post-termination events. The petition alleged: the right to an appeal in the district court of the Board's decision pursuant to 11 O.S.2001 § 50–123; a violation of due process rights pursuant to Okla. Const. art. 2, §§ 2, 7; interference with the right to earn a living pursuant to Okla. Const. art. 2, § 2; retaliatory termination by the City in response to White's pre-termination speaking on matters of public concern; public policy wrongful discharge related to the termination; and, White was defamed by the City's publication of untrue statements about the reasons for his termination. The City moved to partially dismiss White's claims based on 12 O.S. Supp.2010 § 2012(b)(1) and (6) for failure to state a claim on which relief may be granted with respect to: the appeal pursuant to 11 O.S.2001 § 50–123, the claim for violation of due process rights, and the defamation claim.

The district court granted the City's motion as to these claims and certified the matters dismissed for interlocutory appeal pursuant to 12 O.S.2001 § 994, finding "no just reason for delay." [3]

## STANDARD OF REVIEW

■ ¶ 4 A motion to dismiss for failure to state a claim on which relief may be granted will be treated as a motion for summary judgment when "matters outside the pleading are presented to and not excluded by the court. . . ." 12 O.S.2001 § 2012(B). *See Washington v. State ex rel. Dep't of Corrs.,* 1996 OK 139, ¶ 8, 915 P.2d 359, 361–62; *Aven v. Reeh,* 1994 OK 67, n. 1, 878 P.2d 1069. Because City filed a brief in support of its motion to dismiss that includes materials outside of the pleadings that do not appear to have been excluded by the district court, we find the motion to dismiss should be treated as a motion for summary judgment.[4]

¶ 5 We review the district court's grant of summary judgment using a *de novo* standard. *Head v. McCracken,* 2004 OK 84, ¶ 3, 102 P.3d 670, 674; *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. "Although factual matters are considered in ruling on a summary judgment motion, the ultimate de-

district court found, and we assume for purposes of this appeal, that White was a probationary employee at the time of his termination. The City has at all times maintained that White was a probationary employee.

2. At the time of White's termination the City did not have a Board of Review. The City formed a Board to review White's termination, while at the same time allegedly maintaining the position that White was not statutorily entitled to such review.

3. The district court also found the matters appropriate for interlocutory appeal pursuant to 12 O.S.2001 § 952(b)(3). In an order dated November 10, 2009, the Oklahoma Supreme Court ordered that the "cause shall proceed as an appeal from final order under 12 O.S. § 994." The district court issued an order to stay the proceedings in regard to White's remaining claims against the City pending resolution of this appeal.

4. City contends that the motion should not be converted into one for summary judgment because of the rule that a trial court has wide

discretion to consider affidavits and other documents when addressing a jurisdictional challenge, without converting the motion into one for summary judgment. *See Visteon Corp. v. Yazel,* 2004 OK CIV APP 52, ¶¶ 14–16, 91 P.3d 690, 693. Although this is true, we find the rule inapplicable to this case. First, City's motion to dismiss is not based solely on a jurisdictional challenge. The rule cited by City applies to 12(b)(1) motions to dismiss for lack of subject matter jurisdiction, and not to a 12(b)(6) motion to dismiss for failure to state a claim. Second, there is an exception to the rule when the question of jurisdiction is intertwined with the merits of the case. *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995). Because the question of whether the district court has jurisdiction to hear White's appeal depends on interpretation of the statute that creates the remedy White seeks, "resolution of the jurisdictional question is intertwined with the merits of the case." *See id.* When such is the case, the 12(b)(1) motion should be treated either as a 12(b)(6) motion to dismiss or as a motion for summary judgment. *Id. See Visteon Corp. v. Yazel,* 2004 OK CIV APP 52, ¶¶ 19–20, 91 P.3d at 694 (citing *Davis ex rel. Davis v. U.S.,* 343 F.3d 1282 (10th Cir.2003)).

cision turns on the purely legal determination of whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Head,* 2004 OK 84, ¶ 3, 102 P.3d at 674 (citing *Carmichael,* 1996 OK 48, ¶ 2, 914 P.2d at 1053). On review we examine "the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact, and all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party." *Id.* (citing *Manley v. Brown,* 1999 OK 79, n. 30, 989 P.2d 448).

■ ¶ 6 Resolution of this appeal involves "a question concerning statutory interpretation because the meaning of a legislative enactment … is central to determining … entitlement to summary judgment." *Id.* ¶ 5. "A legal question involving statutory interpretation is subject to *de novo* review, i.e., a non-deferential, plenary and independent review of the trial court's legal ruling." *Fulsom v. Fulsom,* 2003 OK 96, ¶ 2, 81 P.3d 652, 654 (citing *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305 and n. 5).

## ANALYSIS

¶ 7 White contends he was terminated from his employment without "just cause" as he claims is required by statute for members of the System, and that the termination and subsequent review process violated his due process rights. White further alleges the City defamed him by forcing him to make false and defamatory publications to third parties.

### I. Entitlement to Appeal the Board's Decision

¶ 8 White contends that he is entitled to an appeal in the district court of the Board's decision pursuant to the procedures provided in 11 O.S.2001 § 50–123. The statute provides in part:

The governing body of every participating municipality, except municipalities which have provided for a civil service board of review or merit board, or have negotiated a contract covering discharge with their members to hear such appeals, shall establish a board of review to hear appeals concerning the discharge of members. The board of review shall consist of the mayor, ex officio, who shall be a voting member, and four members to be appointed by the governing body of the participating municipality....

11 O.S.2001 § 50–123(A). An appeal of the Board's decision is controlled by statute:

Notwithstanding any other provision of law, any aggrieved party may appeal the decision of the State Board in granting, denying or adjusting a pension or retirement benefit, and such appeal shall be made in the district court of Oklahoma County. The appeal shall be commenced within thirty (30) days after the date of the State Board's decision. Notice of the intent to appeal shall be given by the aggrieved party to the State Board within ten (10) days after the date of the State Board's decision. The proceedings, practice, and standards of review in the district court shall be governed by the Administrative Procedures Act except as otherwise provided in this section. The district court may affirm, reverse or modify the decision of the State Board. The court may also remand the cause with specific instructions to the State Board. The court costs and expense of preparation of any transcript shall be paid by the losing party.

11 O.S. Supp.2010 § 50–129.

¶ 9 Whether White is entitled to the protections provided in section 50–123 requires interpretation of that statute. The City claims exemption from the statutory requirements by virtue of its having created a civil service system (CSS) to review termination of members of the System. However, City's CSS expressly excludes probationary employees from its protection. The dispositive issue on appeal is whether the Legislature intended probationary employees who are members of the System to be entitled to protection by the statute. We note that this is a question of first impression in Okla-

homa.[5]

### A. Construction of the Statute

¶ 10 "The primary goal of statutory construction is to ascertain and follow legislative intention." *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 13, 33 P.3d 302, 307. "The intent is ascertained from the whole act based on its general purpose and objective. In construing statutes, relevant provisions must be considered together whenever possible to give full force and effect to each." *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, 1995 OK 62, ¶ 5, 901 P.2d 800, 803.

¶ 11 The City claims White's appeal must fail because White was not entitled to review of his termination by the Board, or to an appeal of the Board's decision pursuant to 11 O.S.2001 § 50–123. The City contends that it is not required to provide White with the statutory procedures because it is exempt from the statute. The statute provides:

> No member may be discharged except for cause. Any member who is discharged may appeal to the board of review herein provided. Appeals from decisions of said board of review may be taken in the manner provided for in this article, provided the provisions of this section relating to the board of review and discharge shall not apply to any municipality which has heretofore or hereinafter established by its charter civil service or merit system pertaining to the appointment and discharge of members and an independent board or commission having authority to hear actions involving the discharge of members.

11 O.S.2001 § 50–123(B). City contends that because the Del City Charter implements a civil service system and reviewing commission, it is exempt from the requirements of the statute. We agree that the statute was not intended to apply to cities that have implemented such a system. However, the City also concedes that as a probationary employee White was excluded from the protections provided by the City's CSS. Therefore, the City claims White was not entitled to review of his termination.

¶ 12 The statute, on the other hand, does not distinguish between pension members who are probationary employees and those who are not. It provides that:

> All persons employed as full-time duly appointed or elected officers who are paid for working more than twenty-five (25) hours per week or any person hired by a participating municipality who is undergoing police training to become a permanent police officer of the municipality shall participate in the System upon initial employment with a police department of a participating municipality.

11 O.S. Supp.2010 § 50–112(A). Members are defined as "all eligible officers of a participating municipality and any person hired by a participating municipality who is undergoing police training to become a permanent police officer of the municipality." 11 O.S. Supp.2010 § 50–101(6). This definition of "members" in the statute includes probationary officers like White. "Where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout." *Walton v. Donnelly*, 1921 OK 258, ¶ 10, 201 P. 367, 370. *See* 25 O.S.2001 § 2 ("Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears."). Therefore, probationary officers are "members" who are entitled to the protections of section 50–123.

¶ 13 City contends that the Supreme Court's holding in *Fraternal Order of Police, Lodge 108 v. City of Ardmore*, 2002 OK 19, 44 P.3d 569, is controlling of this issue. In that case, the Court found two probationary officers were not entitled to invoke the grievance arbitration rights pursuant to the Fire and Police Arbitration Act (FPAA), 11 O.S. 2001 and O.S. Supp.2010 §§ 51–101 to 113.

---

**5.** In an opinion released for publication by order of the Court of Civil Appeals, *City of Coweta v. Doughten*, 2011 OK CIV APP 113, 264 P.3d 135 (2011) (petition for certiorari filed July 12, 2011), Division IV of this Court found that the statute did not create a due process interest for a probationary member of the System in a city that was exempt from the provisions of the statute because it had entered into a collective bargaining agreement covering members' discharge.

However, we find that case distinguishable because of the difference between the FPAA and the statute we are called to interpret. The Legislature expressly provided that the FPAA only applies to permanent members of a municipal police department. See 11 O.S. 2001 § 51–102(1). The issue in that case was whether probationary police officers could be considered "permanent members" of the department and therefore entitled to the protections provided by statute. The Court reasoned that "[s]ince a probationary officer is still undergoing initial police training, one in that position has not yet attained permanent membership status under the terms of the pension statute, even though an officer in that category is nonetheless included in the pension system." *City of Ardmore*, 2002 OK 19, ¶ 13, 44 P.3d at 572–73. The Court also found that the Legislature recognized "probationary police officers as a distinct class from permanent officers," both classes of which are included in the definition of the term "member" in section 50–101(6). *Id.* "When the provisions of a statute assign one meaning to a term, its definition will apply in *every other instance* in which the same term is found *anywhere else* in the compilation." *Id.* ¶ 14, 44 P.3d at 573 (emphasis in original). "Because in the pension statute the term 'member' embraces two distinct classes of police officers, probationary and permanent, that distinction applies with equal force under the terms of the FPAA as well." *Id.* Therefore, "the legislature's use of the modifier 'permanent' [in the FPAA] eliminates from its ambit those officers who still hold probationary status." *Id.*

¶ 14 We find this distinction determinative. The Legislature's definition of "member" in section 50–101(6) includes probationary officers like White. And, unlike the FPAA, the statute pursuant to which White seeks protection makes no distinction between probationary and permanent members of the System. We note that our interpretation is consistent with other acts in which the Legislature makes explicit distinctions between permanent and probationary employees. See 74 O.S. Supp.2010 § 840–4.13(D); 47 O.S. Supp.2010 § 2–105(C). Had the Legislature not intended the statute to protect probationary as well as permanent officers, it could have distinguished between the two as it did in the FPAA. Because no such distinction was made, we find the intent of the Legislature was to extend this protection to both classes of officers encompassed in the definition of "member" pursuant to the statute.

¶ 15 Therefore, section 50–123(B) not only provides "for cause" termination for all members of the System, including probationary employees, but also provides members with recourse to the procedure provided in the statute in the event of termination. The only exceptions to the statute are for cities that have implemented a civil service system and an independent board to conduct reviews of decisions to terminate members' employment, or have entered into a collective bargaining agreement that covers discharge of members. Neither of these exceptions applies to this case. Because, as a probationary employee, White was by definition not covered by the City's CSS, he is entitled to the protections provided in section 50–123.[6] Our conclusion is in accordance with the views expressed by the Oklahoma Supreme Court:

> Section 50–123 is not ambiguous, and it is clearly intended to protect policemen who are members of the state pension and retirement system from arbitrary discharge from employment. Contrary to the City's assertions that these members are at-will employees, the statute restricts the reason for their discharge to 'for cause' and ensures that all members will have a right to appeal the discharge from employment. This accords members a legitimate expec-

---

6. Although this result is different from the result reached in *City of Coweta v. Doughten*, discussed *infra* in note 5, we find that case distinguishable. That case involved a city that was exempt from the statutory requirements because it had negotiated a collective bargaining agreement that covered discharge of members and appeals of termination decisions. The *Doughten* Court found

that in the negotiation process, the union had "gained the right to grievance and arbitration for its permanent, full-time members, and bargained away the statutory right to discharge review for its probationary members." The City's CSS did not result from any similar bargained-for exchange but was created by the City's unilateral action.

tation of continued employment until 'cause' for discharge is shown. The statute requires that unless an appeal process is already in place in a municipality (by means of a civil service or merit board or a negotiated contract covering discharge of their members to hear appeal), the municipality must appoint a board of review to hear appeals from a discharge from employment.

*City of Durant v. Cicio*, 2002 OK 52, ¶ 14, 50 P.3d 218, 221–22 (interpreting section 50–123 as applied to a System member permanently employed by a city that did not have an independent civil service system in place).

 ¶ 16 The City contends that even if the Legislature did intend to provide protection for probationary officers pursuant to the statute, the City Charter should control because the discharge of municipal police officers is a matter of purely local concern. It is true that "municipalities of this state may under our Constitution adopt charters in which they reserve unto themselves the full power of local self-government." *Sparger v. Harris*, 1942 OK 418, ¶ 11, 131 P.2d 1011, 1013. But, "[c]harter provisions, which have the force of a city's fundamental law, supersede state law *only* when they affect a subject that is deemed to lie exclusively within municipal (or local) concern." *Simpson v. Dixon*, 1993 OK 71, ¶ 21, 853 P.2d 176, 186. We find the law in Oklahoma is that the discharge of municipal police officers is no longer a matter of purely local concern:

> The protection of employment rights of policemen is not an issue of merely local municipal concern.... We agree ... that the home rule supremacy analysis on which *Goodwin* and *Rains* are based is no longer good law, as this Court has since determined that police and fire protection is unquestionably a matter of statewide interest.

*City of Durant v. Cicio*, 2002 OK 52, ¶ 17, 50 P.3d 218, 222 (citing *Goodwin v. City of Oklahoma City*, 1947 OK 200, 182 P.2d 762, and *Rains v. City of Stillwater*, 1991 OK CIV APP 87, 817 P.2d 753). *See Fraternal Order of Police, Lodge No. 165 v. City of Choctaw*, 1996 OK 78, ¶ 19, 933 P.2d 261, 267. And, "the home rule doctrine is not applicable to

such issues where wider public interests are involved." *City of Durant*, 2002 OK 52, ¶ 19, 50 P.3d at 222–23.

> The statewide interest in the protection of the employment rights of member policemen from arbitrary discharge is reflected in the provisions of § 50–123, which prohibit discharge 'except for cause' and assure all members of the System a right to appeal their discharge. A plain reading of the statute shows that this protection to members is not just a matter of local concern, since all members, even those ... who are not covered by an existing civil service or merit system or a negotiated contract, are entitled to a review of their discharge. All aspects of the administration and operation of the statewide Oklahoma Police Pension and Retirement System ... are matters of substantial interest to the state, and the System is not subject to the control of the individual participating municipalities.

*Id.* ¶ 21, 50 P.3d at 223. The Court in *City of Durant* determined "that section 50–123 protects a member's right to continue in his employment in the absence of a showing of cause, and the board of review has the authority to pass on the merits of the discharge decision." *Id.* ¶ 23.

 ¶ 17 "Municipal ordinances must give way where they conflict with the general laws of the state, and 'while they may run concurrent with the general laws of the state they must not run counter thereto.'" *Fancy's Entm't, L.L.C. v. City of Enid*, 2007 OK CIV APP 112, ¶ 12, 171 P.3d 928, 933 (quoting *Ex parte Gammel*, 89 Okla.Crim. 400, 408, 208 P.2d 961, 965 (Okla.Crim.App.1949)). "In order for there to be a conflict between a state enactment and a municipal regulation, both must contain either express or implied conditions which are inconsistent and irreconcilable with one another." *Moore v. City of Tulsa*, 1977 OK 43, ¶ 2, 561 P.2d 961, 963. Although we agree with the City that the Legislature intended to provide an exception to the statute for cities with a charter that implements a civil service system, or that have entered into a collective bargaining agreement, we find that the Legislature's definition of "member" that includes both

probationary and permanent employees applies even to cities that have implemented their own civil service system. Therefore, absent a collective bargaining agreement, if a city elects to unilaterally remove itself from the ambit of the statute's provisions concerning discharge of System members, it must provide a review and appeal process for all members, including probationary officers as provided by the statute. To do otherwise would impermissibly conflict with the requirements of the statute. Therefore, City's argument fails.

¶ 18 Consequently, White was entitled to the statutory protections set forth in 11 O.S. 2001 § 50–123 if he was not covered by the City's CSS. Because the City had no process in place to hear an appeal of the Board's decision regarding White's termination, he was entitled to an appeal to the district court from the Board's decision. Therefore, it was error to grant summary judgment on White's claim requesting review of the Board's decision.[7]

### B. Due Process Violation

 ¶ 19 White claims it was a violation of his due process rights to terminate his employment other than "for cause," and that he was entitled to a review of his termination either by the board of review provided in section 50–123 or by the review commission established by the City's Charter. White claims section 50–123 creates a due process interest in continued employment for probationary employees who are "members" of the System. Based on our analysis in Part I.A, we agree. White claims that the procedure City provided him, including a hearing before a Board of Review convened by the City, did not adequately protect his due process interests. Because the district court found White had no due process interest in continued

employment, it made no findings regarding the adequacy of the procedure White was provided. "An appellate court will not make first-instance determinations of disputed *law or fact* issues. That is the trial court's function *in every case.*" *Bivins v. State ex rel. Oklahoma Mem'l Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464 (emphasis in original). On remand, White may raise this issue in his appeal to the district court of the Board's decision affirming termination of his employment.

### II. Defamation

 ¶ 20 White claims the City defamed him by forcing him to make false representations to third parties. He bases this contention on representations White claims he has been forced to make to potential employers in job applications and interviews, stating the reasons given by the City for his termination, that include "dishonesty" and "ineptitude." City contends that it cannot be held liable for any intentional or unintentional misrepresentations because it is immune from suit for such claims pursuant to the Governmental Tort Claims Act, 51 O.S.2001 and O.S. Supp. 2010 §§ 151 to 200 (GTCA).

 ¶ 21 In an action for defamation: a private figure must prove (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage [per se], or the existence of special damage [per quod].

*Tanique, Inc. v. State ex rel. Okla. Bureau of Narcotics and Dangerous Drugs,* 2004 OK CIV APP 73, ¶ 29, 99 P.3d 1209, 1217 (quoting *Mitchell v. Griffin Television, L.L.C.,* 2002 OK CIV APP 115, ¶ 5, 60 P.3d 1058,

---

7. The City also contends that it is not required to comply with the Administrative Procedures Act, 75 O.S.2001 and O.S. Supp.2010 §§ 250 to 323, because that Act does not apply to municipalities. See 75 O.S.2001 § 250.5. "Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedure from those in the general statute, it will be held that the special statute applies to the

subject matter, and that the general statute does not apply." *State of Oklahoma v. Beeler,* 1958 OK 168, ¶ 0, 327 P.2d 664 (Syllabus 1). Section 50–129 of Title 11 unambiguously provides that the APA standard shall control the district court's review of the Board's decision. Therefore, if White is entitled to the protections of section 50–123, then the district court has jurisdiction to review the Board's decision using the standard provided in sections 322 and 323 of the APA.

1061). The fault standard in a defamation action is at least negligence, or, in a case involving a public figure a showing of actual malice may be required. *See Mitchell,* 2002 OK CIV APP 115, ¶ 6, 60 P.3d at 1061. The actual malice standard requires that the defendant have acted with knowledge that the publication was false, "or with reckless disregard of whether it was false or not." *Martin v. Griffin Television, Inc.,* 1976 OK 13, ¶ 28, 549 P.2d 85, 93. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

▆▆ ¶ 22 The GTCA expressly provides that the state will not be liable for negligent misrepresentations by employees. 51 O.S. Supp.2010 § 155(17) ("The state or a political subdivision shall not be liable if a loss or claim results from ... [m]isrepresentation, if unintentional."). Additionally, there is no liability pursuant to the Act if the employee's action was outside the scope of employment. *See* 51 O.S.2001 § 153(A). " 'Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority...." 51 O.S. Supp.2010 § 152(12). Courts have recognized that this provision excludes torts that could not have been committed by an employee acting in "good faith." *See Fehring v. State Ins. Fund,* 2001 OK 11, ¶ 23, 19 P.3d 276, 283 ("when, for viability, the tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of governmental employees, there can be no liability against the governmental entity in a GTCA-based suit"). The City contends that therefore it cannot be liable for either an intentional or unintentional representation made by an employee. We agree. Because the GTCA expressly excludes claims based on negligent misrepresentations, a party must prove at least reckless disregard in order to have a viable defamation claim pursuant to the GTCA. However, because this standard requires that the publisher of the statement

have "entertained serious doubts" as to the truth of the statement, *see Hart v. Blalock,* 1997 OK 8, ¶ 9, 932 P.2d 1124, 1126, we find that a party cannot act with "reckless disregard" and also be acting within the "scope of employment" pursuant to the GTCA.[8] *See Fehring,* 2001 OK 11, ¶ 29, 19 P.3d at 285 ("Acts performed with reckless disregard for an individual's rights also lack good faith and are outside the scope of employment under the provisions of the GTCA."). We therefore find that the district court correctly dismissed White's defamation claim against the City and affirm that aspect of the order appealed.

## CONCLUSION

¶ 23 Todd White appeals the district court's dismissal of his claims against the City appealing the Board's affirmation of his termination of employment as a police officer for the City, alleging that the termination and subsequent review proceedings violated his due process rights, and alleging that the City defamed him. We find that 11 O.S.2001 § 50–123 applies to White. Therefore, White is entitled to the protections provided in the statute, including appellate review in the district court of the Board's decision affirming his termination. The district court order dismissing that appeal is reversed. On remand, White may raise the due process issue in his appeal to the district court of the Board's decision. However, we find that the City cannot be held liable in a defamation action pursuant to the GTCA based on the facts White alleged, and that decision of the district court is affirmed.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, P.J., and WISEMAN, J., concur.

---

8. We further find that based on the Legislature's express exception to liability for claims based on negligent misrepresentations, it would not further legislative intent to allow claims based on intentional or reckless misrepresentations but not negligent ones. Finding that the City is immune from suit for defamation, we decline to address City's argument that there can be no viable action for defamation when the publication originates with the claimant, rather than a third party.