OSCN Found Document:BATES v. P.C. CAST

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 BATES v. P.C. CAST
2014 OK CIV APP 8
Case Number: 111739
Decided: 12/05/2013
Mandate Issued: 01/03/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 8, __ P.3d __

ERIN BATES, Plaintiff/Appellant,
v.
P.C. CAST, a/k/a PHYLLIS CAST, an individual, KRISTIN CAST, an individual, and ST. MARTIN'S PRESS, a Foreign Limited Liability Company, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY, OKLAHOMA

HONORABLE JEFFERSON D. SELLERS, JUDGE

AFFIRMED

Daniel E. Smolen, Smolen, Smolen & Roytman, P.L.L.C., Tulsa, Oklahoma, for Appellant,
Robert D. Nelon, Jon Epstein, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, for Appellees.

Larry Joplin, Chief Judge:

¶1 Plaintiff/Appellant Erin Bates (Plaintiff) seeks review of the trial court's order granting the motion to dismiss of Defendants/Appellees P.C. Cast, a/k/a Phyllis Cast, an individual, Kristin Cast, an individual, and St. Martin's Press, a Foreign Limited Liability Company (individually, by name, or, collectively, Defendants) on Plaintiff's claims to actual and punitive damages for defamation, invasion of privacy -- appropriation of likeness -- false light, and intentional infliction of emotional distress. In this appeal, Plaintiff asserts the trial court erred as a matter of both law and fact in dismissing her claims.

¶2 Plaintiff filed her Petition October 31, 2012. She alleged that she met Defendant Phyllis Cast while a high school student where Ms. Cast was a teacher, that they developed a friendship, and that she worked for Ms. Cast after she graduated as a personal assistant for a period of time. Plaintiff further alleged that Defendants Phyllis Cast and her daughter, Kristin Cast, were authors of the House of Night series of books about "vampyres," published by Defendant St. Martin's Press, that Defendants, without her consent, named a character Erin Bates in their latest book, Hidden, A House of Night Novel, and that Defendants described Erin Bates disparagingly in the book. Plaintiff further alleged that Defendant Phyllis Cast, during a live promotion of the book, identified Plaintiff Erin Bates as a real person living in Tulsa.

¶3 Plaintiff alleged the Defendants' descriptions of the Erin Bates character in their book were of and concerning her, were defamatory, and injured her professional and personal reputation. Plaintiff further alleged that Defendants wrongfully appropriated her name, without her knowledge and consent, for their personal gain, that Defendants' description of her depicted her in a false light and invaded her privacy, and that Defendants' acts were outrageous and intentional, causing her severe emotional distress. Plaintiff consequently sought the recovery of actual and punitive damages.

¶4 Defendants filed a motion to dismiss. To the motion to dismiss, Defendants appended a copy of their book, Hidden, A House of Night Novel, authored by Defendants Phyllis Cast and Kristen Cast, and published by Defendant St. Martin's Press. As to the defamation claim, Defendants argued the book was a work of fiction about a school for "vampyres" attended by the fictional character named Erin Bates, and the descriptions of the fictional character, Erin Bates, could not be shown to refer to Plaintiff, or proven true or false, and were not defamatory as a matter of law. Defendants further argued that, because the statements could not be proven true or false, the claim for false light -- invasion of privacy likewise failed. As to the name-appropriation claim, Defendants asserted Plaintiff did not allege, and could not prove, an essential element of that claim, i.e., that the name, Erin Bates, had any inherent, intrinsic or commercial value. Defendants also argued that, as a matter of law, their use of Plaintiff's name for a fictional character in their book was not so extreme and outrageous as to support a claim for intentional infliction of emotional distress.

¶5 Plaintiff objected to Defendants' motion to dismiss. To her response, Plaintiff attached a recording of the promotional event where Defendant identified Plaintiff Erin Bates as a real person, and admitted she based many of her characters on her former students. Plaintiff also attached copies of internet comments by fans of the House of Night series, describing the Erin Bates character as less than admirable.

¶6 Plaintiff first asserted the recording of the promotional event, identifying her as Erin Bates, a real person, demonstrated Defendants' description of the book character as of and concerning her, and the internet comments proved the defamatory sting of the descriptions, sufficiently supporting the claims for defamation and false light invasion of privacy. Plaintiff further asserted she sufficiently alleged a claim for misappropriation of name, and that an allegation of her name's intrinsic or inherent value was not required to survive a motion to dismiss. Plaintiff also asserted the descriptions of her in the book were so extreme and outrageous as to support an emotional distress claim.

¶7 On consideration of the pleadings and submissions, the trial court granted Defendants' motion, and dismissed all of Plaintiff's claims. Plaintiff appeals, and the matter stands submitted on the trial court record.[1]

¶8 "When reviewing a trial court's dismissal of an action an appellate court examines the issues de novo." Kirby v. Jean's Plumbing Heat & Air, 2009 OK 65, ¶5, 222 P.3d 21, 23-24. (Footnote omitted.) (Emphasis original.) "A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief." Id. "A petition can generally be dismissed only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory." Id. "A motion to dismiss should be denied if relief is possible under any set of facts which can be established and is consistent with the allegations." Id.

¶9 However, "[i]f, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to the motion by the rules for summary judgment." 12 O.S. 2011 §2012(B). Because the parties offered, and the trial court did not exclude, the tendered evidentiary materials outside the pleadings in support of and opposition to the motion to dismiss, we must treat the motion to dismiss as one for summary judgment. Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶17, 987 P.2d 1185, 1192.

¶10 In this respect, "[s]ummary judgment is appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Wathor v. Mutual Assur. Adm'rs, Inc., 2004 OK 2, ¶4, 87 P.3d 559, 561. "Summary judgment settles only questions of law," and "[t]he standard of review of the questions of law is de novo." Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959, 963. (Emphasis original.) "Where a controversy is resolved by summary judgment, the appellate courts review the entire summary judgment record independently and without deference to a lower court." Id. "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." Id.

¶11 "Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, . . . ." 12 O.S. 2011 §1441. In an action for defamation, a private figure must prove (1) a false and defamatory statement of and concerning him or her, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, that is, libel per se, or the existence of special damage, libel per quod. Restatement of Laws, Second, Torts 2d, §558 (1977); White v. City of Del City, 2012 OK CIV APP 5, ¶21, 270 P.3d 205, 213-214; Springer v. Richardson Law Firm, 2010 OK CIV APP 72, ¶7, 239 P.3d 473, 475; Trice v. Burress, 2006 OK CIV APP 79, ¶10, 137 P.3d 1253, 1257. "It is well settled that 'The language used must, however, be such that persons reading or hearing it will, in the light of surrounding circumstances, be able to understand that it refers to the person complaining, and it must have been so understood by at least one other person . . .'" Layman v. Readers Digest Ass'n, 1965 OK 162, ¶16, 412 P.2d 192, 195. (Citations omitted.) That is to say, "'[i]n order to entitle one to maintain an action for an alleged defamatory statement, it must appear that he is the person with reference to whom the statement is made.'" Layman, 1965 OK 162, ¶21, 412 P.2d at 196. (Citation omitted.)

¶12 In the present case, Plaintiff introduced evidence showing Defendants named a character, Erin Bates, in their book, and that, at a promotional event for the upcoming book, Defendant Phyllis Cast identified Plaintiff Erin Bates as a "real" person. At first blush, then, it might be said that, when the evidence is viewed in the light most favorable to Plaintiff, the disparaging characterizations of the fictitious Erin Bates character contained in Defendants' book arguably refer to the "real" Erin Bates identified by the author.

¶13 The inquiry does not stop here, however. The Defendants' book, depicting a school for vampyres and the school's vampyre students, is clearly a work of fiction and fantasy, and the parties do not cite, nor do we find, any Oklahoma precedent speaking to a claim of defamation arising from a work of pure fiction.

¶14 In this respect, the Restatement of Laws, Second, Torts 2d, recognizes that a defamation claim may arise from the publication of a work of fiction if the plaintiff is sufficiently identified in the fictional work and a reasonable reader of the fictional work would understand the fictional character refers to the plaintiff:

d. Fictitious characters. A libel may be published of an actual person by a story or essay, novel, play or moving picture that is intended to deal only with fictitious characters if the characters or plot bear such a resemblance to actual persons or events as to make it reasonable for its readers or audience to understand that a particular character is intended to portray that person. Mere similarity of name alone is not enough; nor is it enough that the readers of a novel or the audience of a play or a moving picture recognize one of the characters as resembling an actual person, unless they also reasonably believe that the character is intended to portray that person. . . .

Restatement of Laws, Second, Torts 2d, §564, comment d, (1977). (Emphasis original.) Accordingly, in those jurisdictions where the issue has been addressed, the courts uniformly hold that, in order to establish a claim for defamation arising from a work of fiction, it must be shown that, viewing the work of fiction as a whole, the fictional character depicts the plaintiff, and the test is whether a reasonable reader would understand the fictional character "was, in actual fact, [the plaintiff] conducting herself as described." Aguilar v. Universal City Studios, Inc., 174 Cal.App.3d 384, 387 (Cal. App. 2nd Dist. 1985). (Citations omitted.) (Footnote omitted.) Accord, Hooker v. Columbia Pictures Industries, Inc., 551 F.Supp. 1060 (N.D. Ill. 1982); Bindrim v. Mitchell, 92 Cal.App.3d 61 (Cal. App. 2nd Dist.1979); Hicks v. Casablanca Records, 464 F.Supp. 426 (D.C.N.Y. 1978); Middlebrooks v. Curtis Pub. Co., 413 F.2d 141 (4th Cir. (S.C.) 1969); Fetler v. Houghton Mifflin Co., 364 F.2d 650 (2nd Cir. (N.Y.) 1966); Wheeler v. Dell Pub. Co., 300 F.2d 372 (7th Cir. (Ill.) 1962); Clare v. Farrell, 70 F.Supp. 276 (D.C. Minn. 1947); Wright v. R. K. O. Radio Pictures, 55 F.Supp. 639 (D.C. Mass. 1944); Corr v. Sun Printing & Publishing Ass'n, 177 N.Y. 131 (N.Y. 1904). If, however, upon an examination of the entire work, it appears that no reasonable reader would regard the complained-of statements as anything other than "rhetorical hyberbole," the author's "fictional imaginings" or an "imaginative explanation of an episode in that person's life about which no actual facts were known," a defamation claim will not lie. Bindrim, 92 Cal.App.3d at 78, citing, Greenbelt Pub. Assn. v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (U.S. (Md.) 1970),[2] and, Hicks v. Casablanca Records, 464 F.Supp. 426, supra.[3]

¶15 Considering in its totality Defendants' fictional work of fantasy about a school for vampyres, populated by vampyre students, we are hardpressed to say, even viewing the evidentiary materials in the light most favorable to Plaintiff, that any reasonable reader would conclude that the book's fictional "Erin Bates" character actually depicts Plaintiff conducting herself as described in the book. The Erin Bates character is a teenager while Plaintiff is in her mid-twenties. The locale of the book is entirely fictional. The only similarity is the identity of the fictional character's name and Plaintiff's name.

¶16 However, even with the identity of names, when coupled with Defendant's identification of Plaintiff as the "real" Erin Bates, the internet comments by the book's fans disparage the fictional Erin Bates character, and in no way point to Plaintiff as the subject of scorn. It seems clear to us that "any reasonable person who read the book and was in a position to identify [Plaintiff] with [the Erin Bates character] would more likely conclude that the author created the latter in an ugly way so that none would identify her with" Plaintiff. Wheeler, 300 F.2d at 376.

¶17 Given the fictitious, "other-worldly" setting of Defendants' book and its cast of wholly fictitious vampyres, no reasonable reader of the Defendants' book would conclude the fictional character, Erin Bates, depicts Plaintiff acting in the way portrayed in the book. On the evidentiary materials submitted, we hold the trial court did not err in summarily disposing of Plaintiff's defamation claim.

¶18 "'In order to recover for false light invasion of privacy, the plaintiff must show (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" Tanique, Inc. v. State ex rel. Oklahoma Bureau of Narcotics and Dangerous Drugs, 2004 OK CIV APP 73, ¶31, 99 P.3d 1209, 1217. (Citations omitted.) "[T]he defendant must have knowledge of or act in reckless disregard as to the falsity of the publicized matter or the attendant false light," "'equivalent of . . . actual malice,'" "that the defendant had a high degree of awareness of probable falsity or in fact entertained serious doubts as to the truth of the publication.'" Id. (Citations omitted.) "'[T]he right of action for false light invasion of privacy is a product of the same societal need as the tort of outrage or intentional infliction of emotional distress, which will lie only in the presence of extreme and outrageous conduct.'" Id. (Citations omitted.)

¶19 The nature of the vampyre subject matter, the vampyre characters and vampyre school locale is utterly fictitious and fantastic, and is unquestionably the product of the authors' imagination. Under these circumstances, the narrative of Defendants' book cannot be said to be so utterly false or outrageous as to support claims for false light or intentional infliction of emotional distress. We hold the trial court did not err in summarily disposing of Plaintiff's false light and emotional distress claims.

¶20 The Restatement of Laws, Second, Torts 2d, §652C, holds that "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Such a claim rests on the recognition of a person's interest in the exclusive use of his or her own name, in the nature of a property right:

The interest protected by the rule stated in this Section is the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others. Although the protection of his personal feelings against mental distress is an important factor leading to a recognition of the rule, the right created by it is in the nature of a property right, for the exercise of which an exclusive license may be given to a third person, which will entitle the licensee to maintain an action to protect it.

Restatement of Laws, Second, Torts 2d, §652C, comment a. Liability under §652C "is not limited to commercial appropriation[, but] applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one." Restatement of Laws, Second, Torts 2d, §652C, comment b.

¶21 That said, "[t]he value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity." Restatement of Laws, Second, Torts 2d, §652C, comment d. "It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the [plaintiff's] name or the likeness that the right of privacy is invaded." Id. Accord, Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70, 86 (W.Va. 1984).[4]

¶22 So, to recover on this theory, the plaintiff must allege and show "'(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."' Slivinsky v. Watkins-Johnson Co., 221 Cal.App.3d 799, 807 (Cal. App. 6th Dist. 1990). (Citations omitted.) Even where the misappropriation cause of action has been codified, a court has held, under a statute substantially similar to §1449, "to plead the statutory remedy provided . . . , there must also be an allegation of a knowing use of the plaintiff's name . . . for purposes of advertising or solicitation of purchases," and "[a] 'direct' connection must be alleged between the use and the commercial purpose." Slivinsky, 221 Cal.App.3d at 807. Stated otherwise, "a plaintiff must show that the defendant used its name 'deliberately to exploit its value for advertising or trade purposes,'" or "that defendant acted with a commercial purpose or otherwise sought some benefit from revealing information about plaintiffs." Pump, Inc. v. Collins Management, Inc., 746 F.Supp. 1159, 1172 (D. Mass. 1990) (Citation omitted); Bisbee v. John C. Conover Agency, Inc., 452 A.2d 689, 693 (N.J. Super. App. Div. 1982.)

¶23 But, and as in defamation, a name misappropriation claim "fails [if there is] no clear identification of plaintiff in the portrayal of the character . . . in the book which would prompt a rational reader to conclude that plaintiff was being described." Allen v. Gordon, 446 N.Y.S.2d 48, 50 (N.Y. App. Div. 1st Dept. 1982). And, if "the potential rewards for using the plaintiff's name [are] too remote and speculative," a misappropriation claim should be dismissed. Marks v. Elephant Walk, Inc., 548 N.Y.S.2d 549, 552 (N.Y. App. Div. 2nd Dept. 1989).

¶24 In Oklahoma, a claim for misappropriation of name is governed statute:

Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof, and any profits from the unauthorized use that are attributable to the use shall be taken into account in computing the actual damages. . . .

12 O.S. §1449(A). "In order to establish a prima facie case of statutory violation of the right of publicity, a plaintiff must plead facts establishing the three elements of the claim: (1) Defendants knowingly used [Plaintiff's] name or likeness, (2) on products, merchandise or goods, (3) without [Plaintiff's] prior consent." Brill v. Walt Disney Co., 2010 OK CIV APP 132, ¶10, 246 P.3d 1099, 1103. Oklahoma has clearly joined the states that condition recovery for misappropriation of likeness or name on the allegation and proof of defendant's unconsented-to use of plaintiff's name for some commercial purpose to plaintiff's damage. See also, Restatement of Laws, Second, Torts 2d, §652C, Reporter's Note.[5]

¶25 In the present case, the allegations of Plaintiff's petition adequately state a claim for misappropriation of name under 12 O.S. §1449(A). However, neither Defendants nor Plaintiff adduced any evidentiary materials affecting the substance of this claim, much less demonstrating the extent of either any profits Defendants may or may not have derived from the use of Plaintiff's name, or any proximate, certain, causally-related damages suffered by Plaintiff. In this evidentiary vacuum, and contrary to Defendants' argument, we are unwilling to hold that Plaintiff was required to produce some evidence of her name's intrinsic value in order to survive the summary disposition of her misappropriation claim.

¶26 Nevertheless, in affirming the trial court's summary disposition of Plaintiff's defamation claim, we held that, given the fictitious, "other-worldly" setting of Defendants' book, and its cast of wholly fictitious vampyres, no reasonable reader of the Defendants' book would believe the fictional character, Erin Bates, depicts Plaintiff, the "real" Erin Bates, acting in the way portrayed in the book. Absent the "clear identification of plaintiff in the portrayal of the character . . . in the book which would prompt a rational reader to conclude that plaintiff was being described," the name misappropriation claim must likewise fail. Allen, 446 N.Y.S.2d at 50.

¶27 The trial court's order summarily disposing of Plaintiff's claims is therefore AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.

FOOTNOTES

[1] See, Rules 4(m), 13(h), Rules for District Courts, 12 O.S., Ch. 2, App.; Okla.Sup.Ct.R. 1.36, 12 O.S., Ch. 15, App.

[2] In Greenbelt, the United States Supreme Court observed: "It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant: it was Bresler's public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense. On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable. Indeed, the record is completely devoid of evidence that anyone in the city of Greenbelt or anywhere else thought Bresler had been charged with a crime." 398 U.S. at 15, 90 S.Ct. at 1542.

[3] In Hicks, the federal district court held: "[T]he right of publicity does not attach here, where a fictionalized account of an event in the life of a public figure is depicted in a novel or a movie, and in such novel or movie it is evident to the public that the events so depicted are fictitious." 464 F.Supp. at 433.

[4] "In order for a communication to constitute an appropriation, mere publication of a person's name or likeness is not enough, the defendant must take for his own use or benefit the reputation, prestige or commercial standing, public interest or other value associated with the name or likeness published."

[5] "Under the statutes in New York, Oklahoma, Utah, and Virginia, the appropriation must be for advertising, or for purposes of trade; . . ."






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2004 OK CIV APP 73, 99 P.3d 1209, TANIQUE, INC. v. STATE ex rel. OKLA. BUREAU OF NARCOTICS AND DANGEROUS DRUGS
Discussed 2006 OK CIV APP 79, 137 P.3d 1253, TRICE v. BURRESS
Discussed 2010 OK CIV APP 72, 239 P.3d 473, SPRINGER v. RICHARDSON LAW FIRM
Discussed 2010 OK CIV APP 132, 246 P.3d 1099, BRILL v. THE WALT DISNEY COMPANY
Discussed 2012 OK CIV APP 5, 270 P.3d 205, WHITE v. CITY OF DEL CITY
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1965 OK 162, 412 P.2d 192, LAYMAN v. READERS DIGEST ASSOCIATION
Discussed at Length 2004 OK 2, 87 P.3d 559, WATHOR v. MUTUAL ASSURANCE ADMINISTRATORS, INC.
Discussed 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed 2009 OK 65, 222 P.3d 21, KIRBY v. JEAN'S PLUMBING HEAT & AIR
Discussed 1999 OK 33, 987 P.2d 1185, 70 OBJ 1353, Patel v. OMH Medical Center, Inc.
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 1441, Definition of Libel
Cited 12 O.S. 1449, Unauthorized Use of Another Person's Right of Publicity
Discussed 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited