OSCN Found Document:BATES v. P.C. CAST

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 BATES v. P.C. CAST
2014 OK CIV APP 8
316 P.3d 246
Case Number: 111739
Decided: 12/05/2013
Mandate Issued: 01/03/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 8, 316 P.3d 246

ERIN BATES, Plaintiff/Appellant,
v.
P.C. CAST, a/k/a 
PHYLLIS CAST, an individual, KRISTIN CAST, an individual, and ST. MARTIN'S 
PRESS, a Foreign Limited Liability Company, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY, OKLAHOMA
HONORABLE JEFFERSON D. SELLERS, JUDGE

AFFIRMED

Daniel E. Smolen, Smolen, Smolen & Roytman, P.L.L.C., Tulsa, Oklahoma, 
for Appellant,
Robert D. Nelon, Jon Epstein, Hall, Estill, Hardwick, Gable, 
Golden & Nelson, P.C., Oklahoma City, Oklahoma, for Appellees.


Larry Joplin, Chief Judge:
¶1 Plaintiff/Appellant Erin Bates (Plaintiff) seeks review of the trial 
court's order granting the motion to dismiss of Defendants/Appellees P.C. Cast, 
a/k/a Phyllis Cast, an individual, Kristin Cast, an individual, and St. Martin's 
Press, a Foreign Limited Liability Company (individually, by name, or, 
collectively, Defendants) on Plaintiff's claims to actual and punitive damages 
for defamation, invasion of privacy -- appropriation of likeness -- false light, 
and intentional infliction of emotional distress. In this appeal, Plaintiff 
asserts the trial court erred as a matter of both law and fact in dismissing her 
claims.
¶2 Plaintiff filed her Petition October 31, 2012. She alleged that she met 
Defendant Phyllis Cast while a high school student where Ms. Cast was a teacher, 
that they developed a friendship, and that she worked for Ms. Cast after she 
graduated as a personal assistant for a period of time. Plaintiff further 
alleged that Defendants Phyllis Cast and her daughter, Kristin Cast, were 
authors of the House of Night series of books about "vampyres," published 
by Defendant St. Martin's Press, that Defendants, without her consent, named a 
character Erin Bates in their latest book, Hidden, A House of Night 
Novel, and that Defendants described Erin Bates disparagingly in the book. 
Plaintiff further alleged that Defendant Phyllis Cast, during a live promotion 
of the book, identified Plaintiff Erin Bates as a real person living in 
Tulsa.
¶3 Plaintiff alleged the Defendants' descriptions of the Erin Bates character 
in their book were of and concerning her, were defamatory, and injured her 
professional and personal reputation. Plaintiff further alleged that Defendants 
wrongfully appropriated her name, without her knowledge and consent, for their 
personal gain, that Defendants' description of her depicted her in a false light 
and invaded her privacy, and that Defendants' acts were outrageous and 
intentional, causing her severe emotional distress. Plaintiff consequently 
sought the recovery of actual and punitive damages.
¶4 Defendants filed a motion to dismiss. To the motion to dismiss, Defendants 
appended a copy of their book, Hidden, A House of Night Novel, authored 
by Defendants Phyllis Cast and Kristen Cast, and published by Defendant St. 
Martin's Press. As to the defamation claim, Defendants argued the book was a 
work of fiction about a school for "vampyres" attended by the fictional 
character named Erin Bates, and the descriptions of the fictional character, 
Erin Bates, could not be shown to refer to Plaintiff, or proven true or false, 
and were not defamatory as a matter of law. Defendants further argued that, 
because the statements could not be proven true or false, the claim for false 
light -- invasion of privacy likewise failed. As to the name-appropriation 
claim, Defendants asserted Plaintiff did not allege, and could not prove, an 
essential element of that claim, i.e., that the name, Erin Bates, had any 
inherent, intrinsic or commercial value. Defendants also argued that, as a 
matter of law, their use of Plaintiff's name for a fictional character in their 
book was not so extreme and outrageous as to support a claim for intentional 
infliction of emotional distress.
¶5 Plaintiff objected to Defendants' motion to dismiss. To her response, 
Plaintiff attached a recording of the promotional event where Defendant 
identified Plaintiff Erin Bates as a real person, and admitted she based many of 
her characters on her former students. Plaintiff also attached copies of 
internet comments by fans of the House of Night series, describing the 
Erin Bates character as less than admirable.
¶6 Plaintiff first asserted the recording of the promotional event, 
identifying her as Erin Bates, a real person, demonstrated Defendants' 
description of the book character as of and concerning her, and the internet 
comments proved the defamatory sting of the descriptions, sufficiently 
supporting the claims for defamation and false light invasion of privacy. 
Plaintiff further asserted she sufficiently alleged a claim for misappropriation 
of name, and that an allegation of her name's intrinsic or inherent value was 
not required to survive a motion to dismiss. Plaintiff also asserted the 
descriptions of her in the book were so extreme and outrageous as to support an 
emotional distress claim.
¶7 On consideration of the pleadings and submissions, the trial court granted 
Defendants' motion, and dismissed all of Plaintiff's claims. Plaintiff appeals, 
and the matter stands submitted on the trial court record.[1]
¶8 "When reviewing a trial court's dismissal of an action an appellate court 
examines the issues de novo." Kirby v. Jean's Plumbing Heat & 
Air, 2009 OK 65, ¶5, 222 P.3d 21, 23-24. (Footnote 
omitted.) (Emphasis original.) "A motion to dismiss for failure to state a claim 
upon which relief may be granted will not be sustained unless it should appear 
without doubt that the plaintiff can prove no set of facts in support of the 
claim for relief." Id. "A petition can generally be dismissed only for 
lack of any cognizable legal theory to support the claim or for insufficient 
facts under a cognizable legal theory." Id. "A motion to dismiss should 
be denied if relief is possible under any set of facts which can be established 
and is consistent with the allegations." Id.
¶9 However, "[i]f, on a motion . . . to dismiss for failure of the pleading 
to state a claim upon which relief can be granted, matters outside the pleading 
are presented to and not excluded by the court, the motion shall be treated as 
one for summary judgment and all parties shall be given reasonable opportunity 
to present all material made pertinent to the motion by the rules for summary 
judgment." 12 O.S. 2011 §2012(B). 
Because the parties offered, and the trial court did not exclude, the tendered 
evidentiary materials outside the pleadings in support of and opposition to the 
motion to dismiss, we must treat the motion to dismiss as one for summary 
judgment. Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶17, 987 P.2d 1185, 1192.
¶10 In this respect, "[s]ummary judgment is appropriate only where there are 
no material facts in dispute and the moving party is entitled to judgment as a 
matter of law." Wathor v. Mutual Assur. Adm'rs, Inc., 2004 OK 2, ¶4, 87 P.3d 559, 561. "Summary judgment 
settles only questions of law," and "[t]he standard of review of the questions 
of law is de novo." Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959, 963. (Emphasis 
original.) "Where a controversy is resolved by summary judgment, the appellate 
courts review the entire summary judgment record independently and without 
deference to a lower court." Id. "Summary judgment will be affirmed only 
if the appellate court determines that there is no dispute as to any material 
fact and that the moving party is entitled to judgment as a matter of law." 
Id. "Summary judgment will be reversed if the appellate court determines 
that reasonable men might reach different conclusions from the undisputed 
material facts." Id.
¶11 "Libel is a false or malicious unprivileged publication by writing, 
printing, picture, or effigy or other fixed representation to the eye, which 
exposes any person to public hatred, contempt, ridicule or obloquy, or which 
tends to deprive him of public confidence, or to injure him in his occupation, . 
. . ." 12 O.S. 2011 §1441. In an 
action for defamation, a private figure must prove (1) a false and defamatory 
statement of and concerning him or her, (2) an unprivileged publication to a 
third party, (3) fault amounting at least to negligence on the part of the 
publisher; and (4) either the actionability of the statement irrespective of 
special damage, that is, libel per se, or the existence of special damage, libel 
per quod. Restatement of Laws, Second, Torts 2d, §558 (1977); White v. City 
of Del City, 2012 OK CIV APP 
5, ¶21, 270 P.3d 205, 
213-214; Springer v. Richardson Law Firm, 2010 OK CIV APP 72, ¶7, 239 P.3d 473, 475; Trice v. 
Burress, 2006 OK CIV APP 79, 
¶10, 137 P.3d 1253, 1257. "It is 
well settled that 'The language used must, however, be such that persons reading 
or hearing it will, in the light of surrounding circumstances, be able to 
understand that it refers to the person complaining, and it must have been so 
understood by at least one other person . . .'" Layman v. Readers Digest 
Ass'n, 1965 OK 162, ¶16, 412 P.2d 192, 195. (Citations 
omitted.) That is to say, "'[i]n order to entitle one to maintain an action for 
an alleged defamatory statement, it must appear that he is the person with 
reference to whom the statement is made.'" Layman, 1965 OK 162, ¶21, 412 P.2d at 196. 
(Citation omitted.)
¶12 In the present case, Plaintiff introduced evidence showing Defendants 
named a character, Erin Bates, in their book, and that, at a promotional event 
for the upcoming book, Defendant Phyllis Cast identified Plaintiff Erin Bates as 
a "real" person. At first blush, then, it might be said that, when the evidence 
is viewed in the light most favorable to Plaintiff, the disparaging 
characterizations of the fictitious Erin Bates character contained in 
Defendants' book arguably refer to the "real" Erin Bates identified by the 
author.
¶13 The inquiry does not stop here, however. The Defendants' book, depicting 
a school for vampyres and the school's vampyre students, is clearly a work of 
fiction and fantasy, and the parties do not cite, nor do we find, any Oklahoma 
precedent speaking to a claim of defamation arising from a work of pure 
fiction.
¶14 In this respect, the Restatement of Laws, Second, Torts 2d, recognizes 
that a defamation claim may arise from the publication of a work of fiction if 
the plaintiff is sufficiently identified in the fictional work and a reasonable 
reader of the fictional work would understand the fictional character refers to 
the plaintiff:

 
 d. Fictitious characters. A libel may be published of an actual 
 person by a story or essay, novel, play or moving picture that is intended 
 to deal only with fictitious characters if the characters or plot bear such 
 a resemblance to actual persons or events as to make it reasonable for its 
 readers or audience to understand that a particular character is intended to 
 portray that person. Mere similarity of name alone is not enough; nor is it 
 enough that the readers of a novel or the audience of a play or a moving 
 picture recognize one of the characters as resembling an actual person, 
 unless they also reasonably believe that the character is intended to 
 portray that person. . . .
Restatement of Laws, Second, Torts 2d, §564, comment d, (1977). (Emphasis 
original.) Accordingly, in those jurisdictions where the issue has been 
addressed, the courts uniformly hold that, in order to establish a claim for 
defamation arising from a work of fiction, it must be shown that, viewing the 
work of fiction as a whole, the fictional character depicts the plaintiff, and 
the test is whether a reasonable reader would understand the fictional character 
"was, in actual fact, [the plaintiff] conducting herself as described." 
Aguilar v. Universal City Studios, Inc., 174 Cal.App.3d 384, 387 (Cal. 
App. 2nd Dist. 1985). (Citations omitted.) (Footnote omitted.) Accord, Hooker 
v. Columbia Pictures Industries, Inc., 551 F.Supp. 1060 (N.D. Ill. 1982); 
Bindrim v. Mitchell, 92 Cal.App.3d 61 (Cal. App. 2nd Dist.1979); Hicks 
v. Casablanca Records, 464 F.Supp. 426 (D.C.N.Y. 1978); Middlebrooks v. 
Curtis Pub. Co., 413 F.2d 141 (4th Cir. (S.C.) 1969); Fetler v. Houghton 
Mifflin Co., 364 F.2d 650 (2nd Cir. (N.Y.) 1966); Wheeler v. Dell Pub. 
Co., 300 F.2d 372 (7th Cir. (Ill.) 1962); Clare v. Farrell, 70 
F.Supp. 276 (D.C. Minn. 1947); Wright v. R. K. O. Radio Pictures, 55 
F.Supp. 639 (D.C. Mass. 1944); Corr v. Sun Printing & Publishing 
Ass'n, 177 N.Y. 131 (N.Y. 1904). If, however, upon an examination of the 
entire work, it appears that no reasonable reader would regard the complained-of 
statements as anything other than "rhetorical hyberbole," the author's 
"fictional imaginings" or an "imaginative explanation of an episode in that 
person's life about which no actual facts were known," a defamation claim will 
not lie. Bindrim, 92 Cal.App.3d at 78, citing, Greenbelt Pub. Assn. v. 
Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (U.S. (Md.) 1970),[2] and, Hicks 
v. Casablanca Records, 464 F.Supp. 426, supra.[3]
¶15 Considering in its totality Defendants' fictional work of fantasy about a 
school for vampyres, populated by vampyre students, we are hardpressed to say, 
even viewing the evidentiary materials in the light most favorable to Plaintiff, 
that any reasonable reader would conclude that the book's fictional "Erin Bates" 
character actually depicts Plaintiff conducting herself as described in the 
book. The Erin Bates character is a teenager while Plaintiff is in her 
mid-twenties. The locale of the book is entirely fictional. The only similarity 
is the identity of the fictional character's name and Plaintiff's name.
¶16 However, even with the identity of names, when coupled with Defendant's 
identification of Plaintiff as the "real" Erin Bates, the internet comments by 
the book's fans disparage the fictional Erin Bates character, and in no way 
point to Plaintiff as the subject of scorn. It seems clear to us that "any 
reasonable person who read the book and was in a position to identify 
[Plaintiff] with [the Erin Bates character] would more likely conclude that the 
author created the latter in an ugly way so that none would identify her with" 
Plaintiff. Wheeler, 300 F.2d at 376.
¶17 Given the fictitious, "other-worldly" setting of Defendants' book and its 
cast of wholly fictitious vampyres, no reasonable reader of the Defendants' book 
would conclude the fictional character, Erin Bates, depicts Plaintiff acting in 
the way portrayed in the book. On the evidentiary materials submitted, we hold 
the trial court did not err in summarily disposing of Plaintiff's defamation 
claim.
¶18 "'In order to recover for false light invasion of privacy, the plaintiff 
must show (1) the defendant gave publicity to a matter concerning the plaintiff 
that placed the plaintiff before the public in a false light, (2) the false 
light in which the plaintiff was placed would be highly offensive to a 
reasonable person, and (3) the defendant had knowledge of or acted in reckless 
disregard as to the falsity of the publicized matter and the false light in 
which the other would be placed.'" Tanique, Inc. v. State ex rel. Oklahoma 
Bureau of Narcotics and Dangerous Drugs, 2004 OK CIV APP 73, ¶31, 99 P.3d 1209, 1217. (Citations 
omitted.) "[T]he defendant must have knowledge of or act in reckless disregard 
as to the falsity of the publicized matter or the attendant false light," 
"'equivalent of . . . actual malice,'" "that the defendant had a high degree of 
awareness of probable falsity or in fact entertained serious doubts as to the 
truth of the publication.'" Id. (Citations omitted.) "'[T]he right of 
action for false light invasion of privacy is a product of the same societal 
need as the tort of outrage or intentional infliction of emotional distress, 
which will lie only in the presence of extreme and outrageous conduct.'" 
Id. (Citations omitted.)
¶19 The nature of the vampyre subject matter, the vampyre characters and 
vampyre school locale is utterly fictitious and fantastic, and is unquestionably 
the product of the authors' imagination. Under these circumstances, the 
narrative of Defendants' book cannot be said to be so utterly false or 
outrageous as to support claims for false light or intentional infliction of 
emotional distress. We hold the trial court did not err in summarily disposing 
of Plaintiff's false light and emotional distress claims.
¶20 The Restatement of Laws, Second, Torts 2d, §652C, holds that "[o]ne who 
appropriates to his own use or benefit the name or likeness of another is 
subject to liability to the other for invasion of his privacy." Such a claim 
rests on the recognition of a person's interest in the exclusive use of his or 
her own name, in the nature of a property right:

 
 The interest protected by the rule stated in this Section is the interest 
 of the individual in the exclusive use of his own identity, in so far as it 
 is represented by his name or likeness, and in so far as the use may be of 
 benefit to him or to others. Although the protection of his personal 
 feelings against mental distress is an important factor leading to a 
 recognition of the rule, the right created by it is in the nature of a 
 property right, for the exercise of which an exclusive license may be given 
 to a third person, which will entitle the licensee to maintain an action to 
 protect it.
Restatement of Laws, Second, Torts 2d, §652C, comment a. Liability under 
§652C "is not limited to commercial appropriation[, but] applies also when the 
defendant makes use of the plaintiff's name or likeness for his own purposes and 
benefit, even though the use is not a commercial one, and even though the 
benefit sought to be obtained is not a pecuniary one." Restatement of Laws, 
Second, Torts 2d, §652C, comment b.
¶21 That said, "[t]he value of the plaintiff's name is not appropriated by 
mere mention of it, or by reference to it in connection with legitimate mention 
of his public activities; nor is the value of his likeness appropriated when it 
is published for purposes other than taking advantage of his reputation, 
prestige, or other value associated with him, for purposes of publicity." 
Restatement of Laws, Second, Torts 2d, §652C, comment d. "It is only when the 
publicity is given for the purpose of appropriating to the defendant's benefit 
the commercial or other values associated with the [plaintiff's] name or the 
likeness that the right of privacy is invaded." Id. Accord, Crump v. 
Beckley Newspapers, Inc., 320 S.E.2d 70, 86 (W.Va. 1984).[4]
¶22 So, to recover on this theory, the plaintiff must allege and show "'(1) 
the defendant's use of the plaintiff's identity; (2) the appropriation of 
plaintiff's name or likeness to defendant's advantage, commercially or 
otherwise; (3) lack of consent; and (4) resulting injury."' Slivinsky v. 
Watkins-Johnson Co., 221 Cal.App.3d 799, 807 (Cal. App. 6th Dist. 1990). 
(Citations omitted.) Even where the misappropriation cause of action has been 
codified, a court has held, under a statute substantially similar to §1449, "to 
plead the statutory remedy provided . . . , there must also be an allegation of 
a knowing use of the plaintiff's name . . . for purposes of advertising or 
solicitation of purchases," and "[a] 'direct' connection must be alleged between 
the use and the commercial purpose." Slivinsky, 221 Cal.App.3d at 807. 
Stated otherwise, "a plaintiff must show that the defendant used its name 
'deliberately to exploit its value for advertising or trade purposes,'" or "that 
defendant acted with a commercial purpose or otherwise sought some benefit from 
revealing information about plaintiffs." Pump, Inc. v. Collins Management, 
Inc., 746 F.Supp. 1159, 1172 (D. Mass. 1990) (Citation omitted); Bisbee 
v. John C. Conover Agency, Inc., 452 A.2d 689, 693 (N.J. Super. App. Div. 
1982.)
¶23 But, and as in defamation, a name misappropriation claim "fails [if there 
is] no clear identification of plaintiff in the portrayal of the character . . . 
in the book which would prompt a rational reader to conclude that plaintiff was 
being described." Allen v. Gordon, 446 N.Y.S.2d 48, 50 (N.Y. App. Div. 
1st Dept. 1982). And, if "the potential rewards for using the plaintiff's name 
[are] too remote and speculative," a misappropriation claim should be dismissed. 
Marks v. Elephant Walk, Inc., 548 N.Y.S.2d 549, 552 (N.Y. App. Div. 2nd 
Dept. 1989).
¶24 In Oklahoma, a claim for misappropriation of name is governed 
statute:

 
 Any person who knowingly uses another's name, voice, signature, 
 photograph, or likeness, in any manner, on or in products, merchandise, or 
 goods, or for purposes of advertising or selling, or soliciting purchases 
 of, products, merchandise, goods, or services, without such person's prior 
 consent, or, in the case of a minor, the prior consent of his parent or 
 legal guardian, shall be liable for any damages sustained by the person or 
 persons injured as a result thereof, and any profits from the unauthorized 
 use that are attributable to the use shall be taken into account in 
 computing the actual damages. . . .
12 O.S. §1449(A). "In order to 
establish a prima facie case of statutory violation of the right of 
publicity, a plaintiff must plead facts establishing the three elements of the 
claim: (1) Defendants knowingly used [Plaintiff's] name or likeness, (2) on 
products, merchandise or goods, (3) without [Plaintiff's] prior consent." 
Brill v. Walt Disney Co., 2010 OK CIV APP 132, ¶10, 246 P.3d 1099, 1103. Oklahoma has 
clearly joined the states that condition recovery for misappropriation of 
likeness or name on the allegation and proof of defendant's unconsented-to use 
of plaintiff's name for some commercial purpose to plaintiff's damage. See 
also, Restatement of Laws, Second, Torts 2d, §652C, Reporter's Note.[5]
¶25 In the present case, the allegations of Plaintiff's petition adequately 
state a claim for misappropriation of name under 12 O.S. §1449(A). However, neither 
Defendants nor Plaintiff adduced any evidentiary materials affecting the 
substance of this claim, much less demonstrating the extent of either any 
profits Defendants may or may not have derived from the use of Plaintiff's name, 
or any proximate, certain, causally-related damages suffered by Plaintiff. In 
this evidentiary vacuum, and contrary to Defendants' argument, we are unwilling 
to hold that Plaintiff was required to produce some evidence of her name's 
intrinsic value in order to survive the summary disposition of her 
misappropriation claim.
¶26 Nevertheless, in affirming the trial court's summary disposition of 
Plaintiff's defamation claim, we held that, given the fictitious, 
"other-worldly" setting of Defendants' book, and its cast of wholly fictitious 
vampyres, no reasonable reader of the Defendants' book would believe the 
fictional character, Erin Bates, depicts Plaintiff, the "real" Erin Bates, 
acting in the way portrayed in the book. Absent the "clear identification of 
plaintiff in the portrayal of the character . . . in the book which would prompt 
a rational reader to conclude that plaintiff was being described," the name 
misappropriation claim must likewise fail. Allen, 446 N.Y.S.2d at 50.

¶27 The trial court's order summarily disposing of Plaintiff's claims is 
therefore AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.

FOOTNOTES

[1] 
See, Rules 4(m), 13(h), Rules for District Courts, 12 O.S., Ch. 2, App.; 
Okla.Sup.Ct.R. 1.36, 12 O.S., Ch. 15, App.

[2] In 
Greenbelt, the United States Supreme Court observed: "It is simply 
impossible to believe that a reader who reached the word 'blackmail' in either 
article would not have understood exactly what was meant: it was Bresler's 
public and wholly legal negotiating proposals that were being criticized. No 
reader could have thought that either the speakers at the meetings or the 
newspaper articles reporting their words were charging Bresler with the 
commission of a criminal offense. On the contrary, even the most careless reader 
must have perceived that the word was no more than rhetorical hyperbole, a 
vigorous epithet used by those who considered Bresler's negotiating position 
extremely unreasonable. Indeed, the record is completely devoid of evidence that 
anyone in the city of Greenbelt or anywhere else thought Bresler had been 
charged with a crime." 398 U.S. at 15, 90 S.Ct. at 1542.

[3] In 
Hicks, the federal district court held: "[T]he right of publicity does 
not attach here, where a fictionalized account of an event in the life of a 
public figure is depicted in a novel or a movie, and in such novel or movie it 
is evident to the public that the events so depicted are fictitious." 464 
F.Supp. at 433.

[4] "In 
order for a communication to constitute an appropriation, mere publication of a 
person's name or likeness is not enough, the defendant must take for his own use 
or benefit the reputation, prestige or commercial standing, public interest or 
other value associated with the name or likeness published."

[5] "Under 
the statutes in New York, Oklahoma, Utah, and Virginia, the appropriation must 
be for advertising, or for purposes of trade; . . ."





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2004 OK CIV APP 73, 99 P.3d 1209, TANIQUE, INC. v. STATE ex rel. OKLA. BUREAU OF NARCOTICS AND DANGEROUS DRUGS
Discussed 2006 OK CIV APP 79, 137 P.3d 1253, TRICE v. BURRESS
Discussed 2010 OK CIV APP 72, 239 P.3d 473, SPRINGER v. RICHARDSON LAW FIRM
Discussed 2010 OK CIV APP 132, 246 P.3d 1099, BRILL v. THE WALT DISNEY COMPANY
Discussed 2012 OK CIV APP 5, 270 P.3d 205, WHITE v. CITY OF DEL CITY
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1965 OK 162, 412 P.2d 192, LAYMAN v. READERS DIGEST ASSOCIATION
Discussed at Length 2004 OK 2, 87 P.3d 559, WATHOR v. MUTUAL ASSURANCE ADMINISTRATORS, INC.
Discussed 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed 2009 OK 65, 222 P.3d 21, KIRBY v. JEAN'S PLUMBING HEAT & AIR
Discussed 1999 OK 33, 987 P.2d 1185, 70 OBJ 1353, Patel v. OMH Medical Center, Inc.
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 1441, Definition of Libel
Cited 12 O.S. 1449, Unauthorized Use of Another Person's Right of Publicity
Discussed 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited